# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

KENYETTA RICHARD, as natural tutrix to Z.C.,      CIVIL ACTION
minor child of KADDARRIUS CAGE

VERSUS                                            24-419-SDD-EWD

SHERIFF SID GAUTREAUX, ET AL.

## <u>RULING</u>

Before the Court is a Motion to Dismiss filed by defendants Sheriff Sid J. Gautreaux, III ("Gautreaux" or "Sheriff Gautreaux"), Warden Dennis Grimes ("Warden Grimes" or "Grimes"), Lieutenant Rashie McDowell ("Lt. McDowell"), Corporal Ryan Jackson ("Cpl. Jackson"), Corporal Christian Morris ("Cpl. Morris"), Deputy Jenkins, Deputy Hollis Walker ("Deputy Walker), Detective Will Bankston ("Detective Bankston"), and Cpt. Leonard Harris ("Cpt. Harris"), (collectively, the "Sheriff Defendants").[1] Plaintiff Kenyetta Richard, as natural tutrix to Z.C., minor child of Kaddarrius Cage ("Cage"), ("Plaintiff") opposes the motion.[2] The Sheriff Defendants have filed a reply.[3] The Court has reviewed the allegations, the arguments of the parties, and the law, and is prepared to rule. For the following reasons, the Sheriff Defendants' motion[4] is granted in part and denied in part.

---

[1] Rec. Doc. 37.
[2] Rec. Doc. 52.
[3] Rec. Doc. 60.
[4] Rec. Doc. 37.

## I.     BACKGROUND

This case concerns the tragic death-by-suicide of Cage, a pretrial detainee at East Baton Rouge Parish Prison ("EBRPP") from May 19, 2023, to May 31, 2023.[5] It is alleged that Cage suffered from various mental illnesses and hung himself from the bars of his cell while in solitary confinement on EBRPP's notorious "N line."[6] During his time at EBRPP, Cage allegedly did not receive any mental health treatment nor have access to his five antipsychotic prescription medications.[7] Likewise, Cage was allegedly subject to various "inhumane" living conditions at a prison long recognized as ill-equipped to meet the needs of mentally ill inmates.[8]

On May 29, 2024, Plaintiff brought suit against multiple defendants asserting violations of Cage's civil rights under 42 U.S.C. § 1983, a survival action, and a claim for his wrongful death.[9] These defendants include: (1) the Parish of Baton Rouge/the City of Baton Rouge (the "City/Parish"); (2) Gautreaux, in his official and individual capacities as Sheriff of East Baton Rouge Parish; (3) Grimes, in his official and individual capacities as Warden of EBRPP; (4) Lt. McDowell, individually; (5) Cpl. Jackson, individually; (6) Cpl. Morris, individually; (7) Deputy Jenkins, individually; (8) Deputy Walker, individually; (9) Detective Bankston, individually; (10) Cpt. Harris, individually; (11) American Alternative Insurance Corporation; (12) Turn Key Health Clinics, LLC ("Turn Key")—the private entity contracted to provide health care to pretrial detainees at EBRPP; (13) Cepeada Woodson, in her individual capacity as an employee of Turn Key; (14) Nurse Paris Moore

---

[5] Rec. Doc. 65, p. 1.
[6] *Id.*
[7] *Id.*
[8] *Id.* at pp. 1–2.
[9] Rec. Doc. 1, ¶ 1.

("Nurse Moore"), in her individual capacity as an employee of Turn Key; (15) Amy Smith, in her individual capacity as an employee of Turn Key; and (16) Alysius Allen, in her individual capacity as an employee of Turn Key.[10]

On July 24, 2024, the City/Parish filed a Motion to Dismiss the claims asserted against it.[11] The Court denied the City/Parish's motion on March 14, 2025.[12] In its Ruling, the Court thoroughly summarized Plaintiff's factual allegations against all parties.[13] The Court incorporates that summary herein and will reference and elaborate on Plaintiff's allegations when analyzing the Sheriff Defendants' bases for dismissal. The Sheriff Defendants seek dismissal of the following claims asserted against them:

- **Count 1:** A 42 U.S.C § 1983 violation for the pervasive, extended deficiencies and misconduct in the conditions of confinement, which constitute a *de facto* policy that amounted to punishment before Cage was judged guilty in violation of the Fourteenth Amendment Due Process Clause against Sheriff Gautreaux and Warden Grimes.[14]

- **Count 2:** A *Monell* claim under 42 U.S.C § 1983 for a custom of unsafe, unsanitary, deficient and hazardous conditions of confinement for vulnerable, mentally ill pretrial detainees in violation of the Fourteenth Amendment Due Process Clause against Sheriff Gautreaux and Warden Grimes.[15]

- **Count 3:** A 42 U.S.C § 1983 violation for failing to protect Cage from a known and substantial risk of suicide and/or serious mental health problems in violation of the Fourteenth Amendment Due Process Clause against all Sheriff Defendants.[16]

- **Count 4:** A 42 U.S.C § 1983 violation for deliberate indifference in violation of the Fourteenth Amendment Due Process Clause against Sheriff Gautreaux, Warden Grimes, Detective Bankston, Lt. McDowell, Cpl. Jackson, Deputy Walker, Cpl. Morris, and Deputy Jenkins.[17]

---

[10] Rec. Doc. 4.
[11] Rec. Doc. 19.
[12] Rec. Doc. 65.
[13] *Id.* at pp. 1–12.
[14] Rec. Doc. 4, p. 76.
[15] *Id.* at p. 86.
[16] *Id.* at p. 90.
[17] *Id.* at p. 99.

- **Count 5:** A *Monell* claim under 42 U.S.C § 1983 for failing to protect Cage from a known and substantial risk of suicide and/or serious mental health problems against Sheriff Gautreaux and Warden Grimes.[18]

- **Count 6:** Louisiana state law claims under Civil Code articles 2315, 2315.1, 2315.2, and 2320 for wrongful death, survival actions, and negligence against defendants Sheriff Gautreaux, Warden Grimes, Detective Bankston, Lt. McDowell, Cpl. Jackson, Deputy Walker, Cpl. Morris, and Deputy Jenkins.[19]

## II.    12(B)(6) STANDARD

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[20] The Court may consider "the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[21] "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[22]

In *Bell Atlantic Corp. v. Twombly*, the United States Supreme Court set forth the basic criteria necessary for a complaint to survive a Rule 12(b)(6) motion to dismiss: "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do."[23] A complaint is also insufficient if it merely "tenders 'naked

---

[18] *Id.* at p. 103.

[19] *Id.* at p. 105.

[20] *In re Katrina Canal Breaches Litig.*, 495 F. 3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F. 3d 464, 467 (5th Cir. 2004)).

[21] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F. 3d 757, 763 (5th Cir. 2011) (internal citations omitted).

[22] *In re Katrina Canal Breaches Litig.*, 495 F. 3d at 205 (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).

[23] *Twombly*, 550 U.S. at 545 (internal citations and brackets omitted).

assertion[s]' devoid of 'further factual enhancement.'"[24] However, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[25] In order to satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that the defendant has acted unlawfully."[26] "Furthermore, while the court must accept well-pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"[27] "On a motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"[28]

### III.    SECTION 1983 CLAIMS

"Section 1983 imposes liability on anyone who, under color of state law, deprives a person 'of any rights, privileges, or immunities secured by the Constitution and laws.'"[29] In order to state a claim under 42 U.S.C. § 1983, the plaintiff must establish two elements: "(1) that the conduct in question deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States; and (2) that the conduct complained of was committed by a person acting under color of state law."[30] As for the first element, 42 U.S.C. § 1983 only imposes liability for violations of rights protected by the United States Constitution—not for violations of duties of care arising out of tort law.[31] As to the second element, a "plaintiff must identify defendants who were either personally

---

[24] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).
[25] *Id.*
[26] *Id.*
[27] *Taha v. William Marsh Rice Univ.*, No. 11-2060, 2012 WL 1576099, at *2 (S.D. Tex. May 3, 2012) (quoting *Southland Sec. Corp. v. Inspire Ins. Sols., Inc.*, 365 F. 3d 353, 361 (5th Cir. 2004)).
[28] *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).
[29] *Blessing v. Freestone*, 520 U.S. 329, 340 (1997).
[30] *Jones v. St. Tammany Par. Jail*, 4 F. Supp. 2d 606, 610 (E.D. La. 1998). *See also Elphage v. Gautreaux*, 969 F. Supp. 2d 493, 500 (M.D. La. 2013).
[31] *Griffith v. Johnston*, 899 F.2d 1427, 1436 (5th Cir. 1990).

involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged."[32]

"The performance of official duties creates two potential liabilities, individual-capacity liability for the person and official-capacity liability for the municipality."[33] "Official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent."[34] "To be liable in one's official capacity under Section 1983, the defendant must have been delegated policy-making authority under state law."[35] "[A] state actor may have Section 1983 liability in his/her individual capacity for actions causing the deprivation of a federal right taken under color of state law."[36]

All Sheriff Defendants have been sued in their individual capacities. Sheriff Gautreaux and Warden Grimes have also been sued in their official capacities. There is no dispute that these defendants were acting under color of law in their alleged conduct. Thus, the remaining consideration is whether Plaintiff has satisfied the first requirement to state a claim under Section 1983, namely to state a claim of a constitutional violation.

### A. Individual Capacity Claims

The Sheriff Defendants have asserted the defense of qualified immunity.[37] This defense "applies only to suits against [Section 1983] defendants in their individual capacities."[38] The doctrine of qualified immunity "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction and liability when they perform their

---

[32] *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995).
[33] *Turner v. Houma Mun. Fire & Police Civil Serv. Bd.*, 229 F.3d 478, 484 (5th Cir. 2000).
[34] *Coleman v. E. Baton Rouge Sheriff's Off.*, 2014 WL 5465816, at *3 (M.D. La. Oct. 28, 2014).
[35] *Id.*
[36] *Id.*
[37] Rec. Doc. 37-1, pp. 10–31.
[38] *Walker v. Howard*, 517 F. App'x 236, 237 (5th Cir. 2013).

duties reasonably."[39] In striking this balance, qualified immunity shields "government officials performing discretionary functions" from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[40]

When a public official asserts the defense of qualified immunity, the plaintiff has the burden of establishing a constitutional violation and overcoming the defense.[41] To meet this burden, a plaintiff must show "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."[42] The court has discretion to decide these prongs in any order.[43]

At the 12(b)(6) stage, the court must determine whether, taking the alleged facts in the light most favorable to the plaintiff, the plaintiff has alleged that the defendant's conduct violated a constitutional right.[44]  For the second step, "[f]or a right to be clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'"[45] If a plaintiff alleges that an official's conduct violated a clearly established right, the court must then determine "whether the official's conduct was objectively reasonable under the law at the time of the incident."[46]

---

[39] *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

[40] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) ("Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions.").

[41] *Jackson v. Texas*, 959 F.3d 194, 201 (5th Cir. 2020) (citing *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc)).

[42] *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (en banc).

[43] *Jackson*, 959 F.3d at 200.

[44] *Morgan*, 659 F.3d at 384; *Lytle v. Bexar Cty., Tex.*, 560 F.3d 404, 410 (5th Cir. 2009).

[45] *Turner v. Lieutenant Driver*, 848 F.3d 678, 685 (5th Cir. 2017) (alteration in original) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

[46] *Michalik v. Hermann*, 422 F.3d 252, 258 (5th Cir. 2005); *see also Thompson v. Upshur Cnty., Tex.*, 245 F.3d 447, 457 (5th Cir. 2001).

An official's conduct is not objectively unreasonable "unless all reasonable officials in the [official's] circumstances would have then known that the [official's] conduct violated the plaintiff's rights."[47] When denying qualified immunity, a court must point to "controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity."[48]

When the defense of qualified immunity is raised in a Rule 12(b)(6) motion, "it is the defendant's conduct as alleged in the complaint that is scrutinized for 'objective legal reasonableness.'"[49] Plaintiffs must "assert facts which, if true, would overcome the defense of qualified immunity."[50] A plaintiff seeking to overcome qualified immunity "must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity."[51]

"[T]he Fourteenth Amendment protects pretrial detainees' right to medical care and to 'protection from known suicidal tendencies.'"[52] In evaluating constitutional claims by pretrial detainees, courts in the Fifth Circuit distinguish between challenges to general conditions, practices, rules, or restrictions of confinement and challenges to episodic acts or omissions by jail officials.[53] Plaintiffs may plead both theories in the alternative.[54] Here, Plaintiff seeks recovery against Sheriff Gautreaux and Warden Grimes under both

---

[47] *Carroll v. Ellington*, 800 F.3d 154, 169 (5th Cir. 2015).
[48] *Wyatt v. Fletcher*, 718 F.3d 496, 503 (5th Cir. 2013).
[49] *McClendon*, 305 F.3d at 323 (quoting *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996)).
[50] *Zapata v. Melson*, 750 F.3d 481, 485 (5th Cir. 2014).
[51] *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012).
[52] *Est. of Bonilla by & through Bonilla v. Orange Cnty., Tex.*, 982 F.3d 298, 304 (5th Cir. 2020).
[53] *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 643 (5th Cir. 1996) (en banc).
[54] *Shepherd v. Dall. Cnty.*, 591 F.3d 445, 452 n.1 (5th Cir. 2009).

theories and Lt. McDowell, Cpl. Jackson, Cpl. Morris, Deputy Walker, Deputy Jenkins, Cpt. Harris, and Detective Bankston for episodic acts or omissions.[55]

A conditions of confinement claim "is a constitutional attack on general conditions, practices, rules, or restrictions of pretrial confinement."[56] In such cases, the harm is caused by the condition itself.[57] "A condition of confinement is 'usually the manifestation of an explicit policy or restriction,' although a condition may also reflect an unstated or *de facto* policy, as evidenced by a pattern of acts or omissions 'sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by [officials], to prove an intended condition or practice.'"[58]

In a conditions of confinement claim, the "reasonable relationship test of *Bell v. Wolfish* is apposite."[59] According to that test, "a constitutional violation exists only if we [] find that the condition of confinement is not reasonably related to a legitimate, non-punitive governmental objective."[60] According to the Fifth Circuit, "[a] showing of express intent to punish is not required. Instead, such intent may be presumed where a policy is otherwise senseless."[61] As the court framed this notion in another case:

> A State's imposition of a rule or restriction during pretrial confinement manifests an avowed intent to subject a pretrial detainee to that rule or restriction. Likewise, even where a State may not want to subject a detainee to inhumane conditions of confinement or abusive jail practices, its intent to do so is nevertheless presumed when it incarcerates the detainee in the face of such known conditions and practices.[62]

---

[55] Plaintiff asserts an episodic acts or omissions claim in Court 3 and a deliberate indifference claim in Count 4. Given that deliberate indifference is an element of episodic acts or omissions (*see* discussion *infra*), the Court construes Counts 3 and 4 as one claim.

[56] *Scott v. Moore,* 114 F.3d 51, 53 (5th Cir. 1997) (quoting *Hare*, 74 F.3d at 644).

[57] *Watts v. Pourciau*, No. 20-196, 2020 WL 7344613, at *2 (M.D. La. Nov. 16, 2020).

[58] *Zavala v. City of Baton Rouge/Par. of E. Baton Rouge*, No. 17-656, 2018 WL 4517461, at *9 (M.D. La. Sept. 20, 2018) (citing *Shepherd*, 591 F.3d at 452).

[59] *Scott*, 114 F.3d at 53 (citing *Bell v. Wolfish*, 441 U.S. 520 (1979)).

[60] *Id.* (citing *Bell*, 441 U.S. at 539).

[61] *Shepherd*, 591 F.3d at 454 (citing *Bell*, 441 U.S. at 539).

[62] *Hare*, 74 F.3d at 644.

By contrast, "where the complained-of harm is a particular act or omission of one or more officials, the action is characterized properly as an episodic act or omission case."[63] In such cases, a plaintiff "complains first of a particular act of, or omission by, the actor and then points derivatively to a policy, custom, or rule (or lack thereof) of the municipality that permitted or caused the act or omission."[64] For purposes of imposing liability on a defendant in his *individual* capacity in such a case, a pretrial detainee must establish that the defendant acted with *subjective* deliberate indifference.[65] A person acts with subjective deliberate indifference if (1) "he knows that an inmate faces a substantial risk of serious bodily harm; and (2) he disregards that risk by failing to take reasonable measures to abate it."[66]

For the reasons which follow, the Court will grant the Sheriff Defendants' Motion to Dismiss with respect to Plaintiff's individual capacity claims. Plaintiff has failed to state constitutional violations against each Sheriff Defendant, and all Sheriff Defendants are entitled to qualified immunity.

### 1. Lt. McDowell, Cpl. Jackson, Deputy Walker, Cpl. Morris, and Deputy Jenkins

Plaintiff alleges that while on EBRPP's N line, Cage was "on lockdown in a single cell" and received only a suicide blanket, a suicide smock, and a blue shirt.[67] The N line has an "open bar design in the cells," which "make[s] it an easy place to anchor a ligature for suicide . . . ."[68] Cage's "cell was dark, littered with scrawlings from previous detainees

---

[63] *Scott*, 114 F.3d at 53 (internal quotation marks omitted).
[64] *Id.* at 54.
[65] *Id.*
[66] *Anderson v. Dall. Cnty., Tex.*, 286 F. App'x 850, 860 (5th Cir.2008) (citing *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006)).
[67] Rec. Doc. 4, ¶ 58.
[68] *Id.* at ¶ 74. *See also id.* at ¶¶ 81, 83 (images of Cage's cell illustrating the "open bar design").

on the walls including the words, 'blood,' 'crips[,]' and 'die[,]'" and Cage was to sleep on "a shockingly thin mattress without bed linens . . . ."[69] Under EBRPP's written policies and procedures, prison officials were to make rounds on the N line every 15 minutes for suicidal inmates and every 30 minutes for mentally ill inmates.[70]

On the morning of May 31, 2023,[71] Cpl. Jackson was escorting Nurse Pierson Derek ("Nurse Derek") to the M and N lines to assess other inmates.[72] At 10:03 a.m., Nurse Derek noticed Cage hanging by his neck from his cell's bars with his feet floating in the air.[73] Sometime that morning, Cage used the blue shirt he was issued as a ligature and committed suicide.[74] According the Nurse Derek, Cage was "cold to the touch with cyanosis to his fingertips"—a blue discoloration in the fingertips due to a lack of oxygen in the blood.[75] Cpl. Jackson then radioed in that there was a medical emergency.[76] Lt. McDowell, Deputy Walker, and Nurse Tramecka Hollie ("Nurse Hollie") responded to the scene.[77] Deputy Walker noticed that Cage's feet were blue, and Nurse Hollie saw that his nail beds were blue as well.[78] This sort of blue coloring of the extremities is associated with the "process of blood accumulating within the blood vessels in the extremities of the

---

[69] *Id.* at ¶ 58.
[70] *Id.* at ¶ 88.
[71] The Court notes the First Amended Complaint's discrepancies in what time Cage was found. *See, e.g.,* *id.* at ¶ 98 (noting Cage was found at 10:03 a.m.) and *id.* at ¶¶ 114, 118 (noting Cage was found at 10:10 a.m.).
[72] *Id.* at ¶ 98.
[73] *Id.*
[74] *Id.* at ¶¶ 58, 102. The Court notes Plaintiff's allegation that Cage was not wearing a shirt at the time of his death. *Id.* at ¶ 102.
[75] *Id.* at ¶ 100.
[76] *Id.* at ¶ 101.
[77] *Id.* at ¶¶ 105–06.
[78] *Id.*

body as a result of gravity," also known as livor mortis.[79] Lt. McDowell used a cutting tool to cut the blue shirt around Cage's neck.[80] Cage was pronounced dead at 10:49 a.m.[81]

Based on these allegations, Plaintiff asserts an episodic acts or omission claim against Lt. McDowell, Cpl. Jackson, Deputy Walker, Cpl. Morris, and Deputy Jenkins. She contends that these individuals violated Cage's constitutional rights by (1) having actual knowledge that Cage faced a substantial risk of suicide and/or mental health problems,[82] and (2) failing to follow EBRPP's policy of monitoring those on the N line every 15 to 30 minutes.[83]

The Sheriff Defendants assert that Plaintiff failed to allege that Lt. McDowell, Cpl. Jackson, Deputy Walker, Cpl. Morris, and Deputy Jenkins knew Cage faced a substantial risk of suicide.[84] They argue that Plaintiff does not allege that these defendants came into contact with Cage prior to his suicide.[85] Instead, she alleges that Cpl. Jackson, Lt. McDowell, and Deputy Walker came into contact with Cage after his suicide and fails to allege that Deputy Jenkins and Cpl. Morris came into contact with Cage at all, nor that they were working at EBRPP on the day of Cage's suicide.[86]

In opposition, Plaintiff argues that knowledge of a substantial risk of harm to a pretrial detainee can be inferred if the risk is obvious.[87] She contends that her First Amended Complaint thoroughly describes the substantial risk of harm the N line poses to mentally ill pretrial detainees as well as EBRPP's inhumane conditions, which are long-

---

[79] *Id.* at ¶ 108.
[80] *Id.* at ¶ 102.
[81] *Id.* at ¶ 118.
[82] *Id.* at ¶ 282.
[83] *Id.* at ¶ 280.
[84] Rec. Doc. 37-1, p. 12.
[85] *Id.*
[86] *Id.*
[87] Rec. Doc. 52, p. 10 (citing *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006)).

standing, pervasive, well documented, and known to prison and City/Parish officials.[88] Thus, in Plaintiff's view, Lt. McDowell, Cpl. Jackson, Deputy Walker, Cpl. Morris, and Deputy Jenkins "must have had knowledge of the substantial risk of harm to . . . Cage."[89]

Again, to successfully plead a constitutional violation against Lt. McDowell, Cpl. Jackson, Deputy Walker, Cpl. Morris, and Deputy Jenkins, Plaintiff must allege facts to support the conclusion that these defendants acted with subjective deliberate indifference, meaning that they each knew Cage faced "a substantial risk of serious bodily harm" and disregarded "that risk by failing to take reasonable measures to abate it."[90] "[E]ach named member of that group must be shown to have acted, independently, with deliberate indifference."[91] "In inmate suicide cases, the defendant must be aware of a substantial and significant risk that the inmate will commit suicide and 'effectively disregard[ ] it.'"[92] "Although 'the law is clearly established that jailers must take measures to prevent inmate suicides once they know of the suicide risk,' it is not clearly established 'as to what those measures must be.'"[93]

The Court finds that Plaintiff fails to allege a constitutional violation against Lt. McDowell, Cpl. Jackson, Deputy Walker, Cpl. Morris, and Deputy Jenkins. These defendants are not alleged to have come into contact with Cage prior to his suicide. While Plaintiff contends that a prison official's knowledge of a substantial risk of harm may be inferred if the risk is obvious,[94] the Fifth Circuit has explained that "[s]uicide is inherently

---

[88] *Id.* at p. 11.
[89] *Id.*
[90] *Anderson*, 286 F. App'x at 860 (citing *Gobert,* 463 F.3d at 346).
[91] *Martinez v. City of N. Richland Hills*, 846 F. App'x 238, 243 (5th Cir. 2021).
[92] *Nagle v. Gusman*, No. 12-1910, 2016 WL 768588, at *6 (E.D. La. Feb. 26, 2016) (citing *Jacobs v. W. Feliciana Sheriff's Dept.*, 228 F.3d 388, 395 (5th Cir. 2000).
[93] *Id.* (citing *Jacobs*, 228 F.3d at 395).
[94] Rec. Doc. 52, p. 10 (citing *Easter*, 467 F.3d at 463).

difficult for anyone to predict, particularly in the depressing prison setting."[95] As such, the Court declines to infer that these individuals—who the Court emphasizes are not alleged to have come into contact with Cage prior to his suicide—knew Cage faced a substantial risk of harm solely because he was housed on the N line. Likewise, Plaintiff's failure to monitor allegation does not rise to the level of a constitutional violation. In the Fifth Circuit, "a failure to follow prison policies, procedures, or regulations—without more—does not give rise to a constitutional violation."[96] Therefore, Plaintiff has failed to allege a constitutional violation against Lt. McDowell, Cpl. Jackson, Deputy Walker, Cpl. Morris, and Deputy Jenkins, and these defendants are entitled to qualified immunity.

### 2. Detective Bankston

As to Detective Bankston, Plaintiff alleges that on May 19, 2023, Cage had a schizophrenic and/or manic episode in which he hallucinated that his stepfather was attempting to molest him.[97] As a result of this episode, Cage stabbed his stepfather,[98] who was later hospitalized for a head wound.[99] Sheriff's deputies responded to the scene and arrested Cage for attempted second degree murder.[100] One of these responding officers was Detective Bankston.[101]

Following his arrest, deputies took Cage to EBRPP, despite normally taking him to inpatient mental health facilities after other schizophrenic and/or manic episodes.[102] According to Plaintiff, these deputies knew Cage "had schizophrenia and bipolar disorder,

---

[95] *Est. of Bonilla*, 982 F.3d at 306.
[96] *Guillot on behalf of T.A.G. v. Russell*, 59 F.4th 743, 753 (5th Cir. 2023) (citing *Hernandez v. Estelle*, 788 F.2d 1154, 1158 (5th Cir. 1986)).
[97] Rec. Doc. 4, ¶ 11.
[98] *Id.* at ¶ 15.
[99] *Id.* at ¶ 11.
[100] *Id.* at ¶ 13.
[101] *See id.* at ¶¶ 13, 271.
[102] *Id.*

had previous Orders of Protective Custody after being considered a danger to himself or others, had previously been in mental health wards[,] and . . . was currently suffering from hallucinations."[103] Cage's mother told Detective Bankston that Cage was paranoid schizophrenic and made things up in his head.[104] Likewise, she told Detective Bankston and sheriff's deputies that Cage needed to be under a permanent physician emergency certificate ("PEC") and that the family would hide weapons from Cage to prevent him from harming himself or others.[105] Detective Bankston's notes reflect that he also knew Cage suffered from bipolar disorder.[106]

At the time of his arrest, Cage was on five antipsychotic medications to control his schizophrenia and bipolar disorder.[107] He made bizarre statements to the arresting deputies such as "I got heroism."[108] Cage told Detective Bankston in an interview following his arrest that "they've been raping people in the neighborhood" and that his stepfather attacked his little brother and stepmother, who was "hollering and screaming."[109] Detective Bankston and another sheriff's deputy noticed Cage had a visible bruise or knot on his head, which Cage was unsure of the origin.[110] Cage's mother later called Detective Bankston worried that her son would hurt himself while at EBRPP, but Detective Bankston assured her "that nothing would happen to her son" and that Cage

---

[103] *Id.* at ¶ 13.
[104] *Id.* at ¶ 18.
[105] *Id.* at ¶¶ 17–19.
[106] *Id.* at ¶ 18.
[107] *Id.* at ¶ 9.
[108] *Id.* at ¶ 15.
[109] *Id.* at ¶ 20.
[110] *Id.* at ¶ 21.

"was on suicide watch."[111] She also expressed to Detective Bankston that Cage needed his medications.[112]

Plaintiff asserts an episodic acts or omission claim against Detective Bankston, alleging that he had actual knowledge that Cage faced a substantial risk of suicide and/or mental health problems while at EBRPP.[113] She contends that Detective Bankston acted with deliberate indifference by (1) failing to alert prison officials of the information he learned about Cage during his arrest;[114] (2) failing to alert prison officials of information he learned about Cage from conversations with Cage's mother;[115] and (3) bringing Cage to EBRPP instead of a medical facility.[116]

Even reading these allegations in a light most favorable to Plaintiff, Plaintiff fails to plead a constitutional violation against Detective Bankston. Her factual allegations suggest that Detective Bankston knew Cage faced "a substantial risk of serious bodily harm."[117] Namely, she alleges that Detective Bankston knew Cage had schizophrenia and bipolar disorder, did not have access to his medications, "was on suicide watch,"[118] and that his family would hide weapons from him to prevent him from hurting himself. However, to plead subjective deliberate indifference, Plaintiff must also allege facts to support Detective Bankston disregarding "that risk by failing to take reasonable measures to abate it."[119] Plaintiff fails to do so.

---

[111] *Id.* at ¶ 23.
[112] *Id.* at ¶ 49.
[113] *Id.* at ¶ 282.
[114] *Id.* at ¶ 305
[115] *See id.* at ¶¶ 23, 305.
[116] *Id.* at ¶¶ 271–72, 303, 305.
[117] *Anderson*, 286 F. App'x at 860 (citing *Gobert*, 463 F.3d at 346).
[118] Rec. Doc. 4, ¶ 23.
[119] *Anderson*, 286 F. App'x at 860 (citing *Gobert*, 463 F.3d at 346).

As to Plaintiff's claim that Detective Bankston was deliberately indifferent in bringing Cage to EBRPP instead of a mental health facility, Detective Bankston was following proper procedures prescribed under Louisiana law. Plaintiff alleges that Cage was arrested for stabbing his stepfather and was charged with attempted second-degree murder.[120] Under Louisiana Code of Criminal Procedure article 211(E),

> "[w]hen the officer has reasonable grounds to believe that a person committed the offense of domestic abuse battery…or any other offense involving the use or threatened use of force or a deadly weapon upon the defendant's family members as defined in R.S. 46:2132, upon the defendant's household member…the officer *shall* make a custodial arrest."[121]

Though Detective Bankston could have "execute[d] a statement under private signature specifying that, to the best of his knowledge and belief, [Cage had] a mental illness … and [was] in need of immediate treatment to protect [him] … from physical harm[,]" he was not bound to do so.[122] Even if he would have, he still could not have taken Cage to a mental health facility. It would have then been left to the discretion of a "parish coroner or judge of a court of competent jurisdiction" as to whether Cage would be taken "into protective custody and transported to a treatment facility…."[123]

Detective Bankston likewise did not act with deliberate indifference in failing to relay information he knew about Cage's mental and physical health to medical officials at EBRPP. Plaintiff does not allege that Detective Bankston worked at EBRPP. As Cage's arresting officer, Detective Bankston did not owe Cage a duty of care while he was at EBRPP; as EBRPP's medical provider, Turn Key and its employees owed this duty. Any

---

[120] Rec. Doc. 4, ¶¶ 13, 15.
[121] (emphasis added). Louisiana Revised Statutes § 46:2132(4) defines "family members" to include stepparents.
[122] La. R.S. § 28:53.2 (A).
[123] *Id.*

duty of care Detective Bankston owed to Cage ceased upon his safe arrival at EBRPP, where it is alleged he then underwent a mental health evaluation upon intake.[124] Though Detective Bankston could have relayed information he knew about Cage to Turn Key, Plaintiff's factual allegations suggest that Turn Key already knew this information—either from Cage's initial intake or from subsequent phone calls with Cage's mother.[125] Likewise, "[d]eliberate indifference is an extremely high standard to meet[,]" and the Court cannot infer that Detective Bankston acted with deliberate indifference "merely from a negligent or even a grossly negligent response to a substantial risk of serious harm."[126] Therefore, Plaintiff fails to allege a constitutional violation against Detective Bankston, and he is entitled to qualified immunity.

### 3. *Sheriff Gautreaux, Warden Grimes, and Cpt. Harris*

Plaintiff asserts a conditions of confinement claim against Sheriff Gautreaux and Warden Grimes. "The Fifth Circuit has at least suggested that condition-of-confinement claims are cognizable against individual actors only in their official capacities."[127] Considering so, Plaintiff's conditions of confinement claim against Sheriff Gautreaux and Warden Grimes in their individual capacities is dismissed. Plaintiff also asserts an episodic acts or omission claim against Sheriff Gautreaux, Warden Grimes, and Cpt. Harris. Since Plaintiff does not allege that these individuals "participated in or actively caused" Cage's death, "they can be liable only in their capacities as supervisors."[128]

---

[124] Rec. Doc. 4, ¶ 25.
[125] *Id.* at ¶¶ 25, 70.
[126] *Est. of Allison v. Wansley*, 524 F. App'x 963, 970 (5th Cir. 2013).
[127] *Nagle*, 2016 WL 768588, at *5 (citing *Est. of Allison*, 524 F. App'x at 970 n.4; *Jacobs*, 228 F.3d at 393 n.3; *Est. of Henson v. Wichita Cnty., Tex.*, 795 F.2d 456, 463 (5th Cir. 2015); *Shepherd*, 591 F.3d at 453.
[128] *Guillot*, 59 F.4th at 755 n.10.

"Under [S]ection 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability."[129] "'A supervisory official may be held liable . . . only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury."[130] Importantly, without an underlying constitutional violation, there can be no supervisor liability.[131]

"'In order to establish supervisor liability for constitutional violations committed by subordinate employees, plaintiffs must show that the supervisor act[ed], or fail[ed] to act, with *deliberate indifference* to violations of others' constitutional rights committed by their subordinates.'"[132] "A failure to adopt a policy can be deliberately indifferent when it is obvious that the likely consequences of not adopting a policy will be a deprivation of constitutional rights."[133] A supervisor may also be liable for failure to supervise or train if: "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference."[134]

Given the Court's conclusion that Plaintiff failed to allege a constitutional violation against Lt. McDowell, Cpl. Jackson, Deputy Walker, Cpl. Morris, Deputy Jenkins, and Detective Bankston, Plaintiff likewise fails to allege a constitutional violation against

---

[129] *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987).
[130] *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (quoting *Gates v. Tex. Dep't of Prot. & Reg. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008)).
[131] *Perniciaro v. Lea*, 901 F.3d 241, 259 (5th Cir. 2018) ("[W]ithout an underlying constitutional violation-of which we have found none-there can be no supervisory liability."); *Rios v. City of Del Rio*, 444 F.3d 417, 425–26 (5th Cir. 2006).
[132] *Porter*, 659 F.3d at 446 (quoting *Gates*, 537 F.3d at 435 (internal quotation marks and citation omitted)).
[133] *Id.* (quoting *Rhyne v. Henderson Cnty.*, 973 F.2d 386, 392 (5th Cir. 1992)).
[134] *Id.* (quoting *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009)).

Sheriff Gautreaux, Warden Grimes, and Cpt. Harris as supervisors.[135] Instead of alleging that Sheriff Gautreaux, Warden Grimes, and Cpt. Harris were personally involved in Cage's suicide, Plaintiff alleges that:

- Sheriff Gautreaux and Warden Grimes knew of the risks associated with housing mentally ill inmates at EBRPP—specifically on the N line in cells with bars—but did so anyway, causing Cage to suffer while at EBRPP and inevitably commit suicide;[136]

- Warden Grimes knew that 24-hour surveillance was needed on the N line; Cpt. Harris did not ensure that sheriff employees were timely observing pre-trial detainees on suicide watch or mental health observation, including Cage;[137]

- Sheriff Gautreaux and Warden Grimes had a duty to inform their subordinates of EBRPP's at-home medications policy, but they did not communicate this policy to their subordinates, or their subordinates blatantly disregarded it;[138] and

- Sheriff Gautreaux and Warden Grimes had a duty to provide training for suicide prevention and/or treatment of detainees with severe mental health disorders.[139]

The Court largely views these allegations as challenges to EBRPP's general conditions of confinement and will consider them when analyzing Plaintiff's official capacity condition of confinement claim.[140] To the extent they constitute a "failure to act" claim, the Court again notes that "if a plaintiff fails to state a viable claim against individual deputies for deliberate indifference, then he has also failed to satisfy the causation

---

[135] *See Jordan v. Gautreaux*, 593 F. Supp. 3d 330 (M.D. La. 2022).
[136] Rec. Doc. 4, ¶¶ 270, 276, 277, 278, 284.
[137] *Id.* at ¶¶ 281, 284.
[138] *Id.* at ¶ 289.
[139] *Id.* at ¶ 294.
[140] *See Cope v. Coleman Cnty.*, No. 23-10414, 2024 WL 3177781, at *8 (5th Cir. June 26, 2024) ("When a plaintiff brings a jail suicide claim under alternative theories of episodic acts and omissions or unconstitutional conditions of confinement, courts determine which theory applies based on an assessment of the facts alleged.").

element of a Section 1983 claim against a superior for failure to train and supervise."[141] "All failure to act claims, such as . . . failure to train [or] supervise . . . involve the same basic elements: inadequacy, deliberate indifference, and causation."[142] Therefore, Plaintiff's failure to allege a constitutional violation against Lt. McDowell, Cpl. Jackson, Deputy Walker, Cpl. Morris, Deputy Jenkins, and Detective Bankston is detrimental to her supervisory claims against Sheriff Gautreaux, Warden Grimes, and Cpt. Harris.

In coming to this conclusion, the Court in particular notes Plaintiff's assertion that Sheriff Gautreaux and Warden Grimes "had a duty to inform their staff to accept detainees' at-home medications and see to it that physician approval was obtained and/or to check with his prescribing doctor[,]" but they "either did not communicate it to their employees, or their employees blatantly disregarded it."[143] The Court interprets this as an attempt to hold Sheriff Gautreaux and Warden Grimes liable for Cage not receiving his prescribed medications in the 12 days he was at EBRPP. Again, "supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability"[144] and instead must have acted with "*deliberate indifference* to violations of others' constitutional rights committed by their subordinates[,]'"[145] which the Fifth Circuit "has almost uniformly found . . . to be a 'high standard.'"[146] None of Sheriff Gautreaux and Warden Grimes'

---

[141] *Jordan*, 593 F. Supp. 3d at 356 (citing *Martinez*, 846 F. App'x at 244–45 (citing *Rios*, 444 F.3d at 425 ("It is facially evident that [the test for supervisory liability] test cannot be met if there is no underlying constitutional violation."))).

[142] *Id.* at 354–55 (quoting *Snow v. City of El Paso, Tex.*, 501 F. Supp. 2d 826, 833 n.5 (W.D. Tex. 2006)).

[143] Rec. Doc. 4, ¶ 289. *See also id.* at ¶ 290 ("The sheriff's employees' and Turn Key employees refusal to allow Kimberely Cage to bring Kaddarrius's at-home medication which she repeatedly explained was medically necessary for his severe mental illness, including schizophrenia and bipolar disorder, was tantamount to deliberate indifference to Kaddarrius's serious medical needs.")

[144] *Thompkins*, 828 F.2d at 303.

[145] *Porter*, 659 F.3d at 446 (quoting *Gates*, 537 F.3d at 435 (internal quotation marks and citation omitted)).

[146] *Guillot*, 59 F.4th at 756 (quoting *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001)).

employees committed an underlying constitutional violation, and they are not liable as supervisors for the actions or inactions of Turn Key and its employees.

"The general statutory scheme is that the parish is responsible for the expenses of establishing, maintaining and operating a jail and for all expenses of feeding, clothing, and providing medical treatment to prisoners. The sheriff has the duty of operating a jail and seeing to it that prisoners are properly cared for, fed, and clothed."[147] Under La. R.S. § 15:703, "[t]he governing authority of each parish shall appoint annually a physician who shall attend the prisoners who are confined in parish jails whenever they are sick," but "[i]n lieu of appointing a physician, the governing authority of any parish may enter into a contract with a health care provider, licensed or regulated by the laws of this state, to provide requisite health care services."[148] The City/Parish has done so here through its contract with Turn Key. As such, the City/Parish "can be liable for damages under federal law for failure to contract for and fund constitutionally adequate medical and mental health care."[149]

Louisiana State and Federal courts have found that a sheriff is considered "the final policymaker as to the provision of medical care for § 1983 municipal liability

---

[147] *Boudreaux v. St. Mary Par. Council*, No. 07-0614, 2009 WL 1787678, at *4 (W.D. La. June 18, 2009) (citing *Amiss v. Dumas*, 411 So. 2d 1137, 1141 (La. Ct. App. 1 Cir. 1982)). *See also O'Quinn v. Manuel*, 773 F.2d 605, 609 (5th Cir. 1985) ("Where a municipal body is vested with this sort of fiscal obligation to a jail, its liability for insufficient funding or maintenance will depend on its knowledge of conditions at the jail."); La. R.S. § 15:704 ("Each sheriff shall be the keeper of the public jail of his parish, and shall by all lawful means preserve the peace and apprehend all disturbers thereof, and other public offenders.").
[148] La. R.S. § 15:703(A)–(B).
[149] *Thompson v. Ackal*, No. 15-02288, 2016 WL 1371192, at *5 (W.D. La. Feb. 2, 2016), *report and recommendation adopted*, No. 15-02288, 2016 WL 1370597 (W.D. La. Apr. 5, 2016). S*ee also Roper v. Marino*, No. 92-3988, 1995 WL 222185, at *2 (E.D. La. Apr. 13, 1995) (denying summary judgment because there were "fact issues as to whether medical services and personnel were sufficient at the St. Charles Parish Jail."); La. R.S. § 15:703(A) ("The governing authority of each parish shall appoint annually a physician who shall attend the prisoners who are confined in parish jails whenever they are sick."); *id.* § 15:703(B) ("In lieu of appointing a physician, the governing authority of any parish may enter into a contract with a health care provider, licensed or regulated by the laws of this state, to provide requisite health care services, as required in this Section.").

purposes."[150] "[A]t the pleading stage, allegations of 'tacit approval of, acquiescence in, or purposeful disregard of, rights-violating conduct' will defeat a motion to dismiss predicated on Rule 12(b)(6)."[151] "For this reason, '[s]upervisory liability can be established without direct participation in the alleged events if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation.'"[152] However, prior courts have also found that Louisiana Sheriffs are not "responsible for administering health care assistance to inmates, and thus, cannot be held liable for the alleged actions or inactions of" third-party medical professionals contracted by a City/Parish.[153] "When detainees are under the care of medical experts, non-medical jail staff may generally trust the professionals to provide appropriate medical attention."[154]

Plaintiff makes no factual allegations to suggest that Sheriff Gautreaux, as the final policy maker of health care at EBRPP, had a *de facto* policy of not accepting at-home medications. Instead, she alleges that there was an ambiguity in the City/Parish's contract with Turn Key as to "who was responsible for pharmaceutical management services."[155] She hypothesizes that "it could have been Sheriff Gautreaux" but goes on to allege that "in the Rules and Regulations of Inmates for the EBRPP it states, 'Family and friends

---

[150] *Mixon v. Pohlmann*, No. 20-1216, 2022 WL 2921733, at *8 (E.D. La. July 25, 2022).
[151] *Cleveland v. Gautreaux*, 198 F. Supp. 3d 717, 739 (M.D. La. 2016) (quoting *Camilo–Robles v. Hoyos,* 151 F.3d 1, 7 (1st Cir. 1998)).
[152] *Id.* at 739–40 (quoting *Brown v. Bolin*, 500 F. App'x 309, 314 (5th Cir. 2012); *Cozzo v. Tangipahoa Par. Council–President Gov't*, 279 F.3d 273, 289 (5th Cir. 2002)).
[153] *Sterling v. Narcisse*, No. 23-44, 2024 WL 3635538, at *4 (E.D. La. June 11, 2024). *See also Jordan*, 593 F. Supp. 3d 330.
[154] *Smith v. Harris Cty., Tex.*, 956 F.3d 311, 319 (5th Cir. 2020) (quoting *Miranda v. Cty. of Lake*, 900 F.3d 335, 343 (7th Cir. 2018)). *See also Jordan v. Gautreaux*, No. 21-48, 2023 WL 1491213, at *15–16 (M.D. La. Feb. 2, 2023) (explaining that "any systematic deficiencies in the provision of medical care or monitoring [at EBRPP] are simply not attributable to Sheriff Gautreaux.").
[155] Rec. Doc. 4, ¶ 164.

*pending prison physician authorization and approval* may bring medication into the facility. This will be accomplished through verification with the prescribing physician and/or pharmacy.'"[156]

Considering Plaintiff's allegations, Sheriff Gautreaux created a policy for bringing at-home medications to the prison, which was to be carried out by third-party medical care professionals contracted by the City/Parish, not sheriff's deputies. Turn Key employees did not carry out this policy in the 12 days Cage was at EBRPP. Cage's mother repeatedly called EBRPP and expressed that Cage needed his daily medications or he would harm himself,[157] but it was not until approximately three hours after Cage's death that Turn Key employee Nurse Moore attempted to verify Cage's medications with his pharmacy.[158] "Existence of a constitutionally deficient policy cannot be inferred from a single wrongful act."[159]

For these reasons, there is no underlying constitutional violation for which Sheriff Gautreaux, Warden Grimes, or Cpt. Harris can be held liable as supervisors. Finding no supervisory liability, Plaintiff fails to allege a constitutional violation against Sheriff Gautreaux, Warden Grimes, or Cpt. Harris, and they are thus entitled to qualified immunity.

### B. Official Capacity Claims

"Official-capacity suits ... generally represent only another way of pleading an action against an entity of which an officer is an agent."[160] Official-capacity suits are,

---

[156] *Id.* at ¶ 89 (emphasis added).
[157] *Id.* at ¶ 47. *See also id.* at ¶¶ 59–66.
[158] *Id.* at ¶ 119.
[159] *Cleveland*, 198 F. Supp. 3d at 740 (quoting *Brown*, 500 F. App'x at 314; *Cozzo*, 279 F.3d at 289).
[160] *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (internal quotation marks omitted).

therefore, "treated as a suit against the entity" itself.[161] Accordingly, "[t]o determine whether a public official is liable in his official capacity, the Court looks to the jurisprudence discussing whether a municipality or local government entity is liable under section 1983."[162]

"Although municipalities cannot be held liable under section 1983 by virtue of the doctrine of respondeat superior, they are subject to such liability where official custom or policy is involved in the injury."[163] This principle was first recognized in *Monell v. Department of Social Services*.[164] "Proof of municipal liability sufficient to satisfy *Monell* requires: (1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy (or custom)."[165]

### 1. Episodic Acts or Omissions

Considering the Court's prior analysis, Plaintiff's episodic acts or omissions claim against Sheriff Gautreaux and Warden Grimes in their official capacities, as well as her *Monell* claim for same, is easily dispensed with. "[F]or supervisors not personally involved in the alleged constitutional violations, the legal elements of an individual's supervisory liability and a municipality's liability for failure to train and/or supervise are similar enough such that the same analysis applies to both individual and official capacity claims."[166]

---

[161] *Id.* at 166; *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.").

[162] *Skinner v. Ard*, 519 F. Supp. 3d 301, 312 (M.D. La. 2021) (quoting *Romain v. Governor's Off. of Homeland Sec.*, No. 14-660, 2016 WL 3982329, at *6 (M.D. La. July 22, 2016) (citations and quotations omitted)).

[163] *O'Quinn*, 773 F.2d at 608 (citing *City of Okla. City v. Tuttle*, 471 U.S. 808 (1985)).

[164] 436 U.S. 658 (1978).

[165] *Pineda v. City of Hous.*, 291 F.3d 325, 328 (5th Cir. 2002) (citing *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001)).

[166] *Jordan*, 593 F. Supp. 3d at 361.

Likewise, "*Monell* claims fail for lack of an underlying constitutional violation."[167] Therefore, the Sheriff Defendants' motion is granted in this respect, and these claims are dismissed.

### 2. Conditions of Confinement

Under the Due Process Clause, "a pretrial detainee may not be punished prior to an adjudication of guilt."[168] "When a pretrial detainee complains of conditions or restrictions of detention, 'the proper inquiry rather is whether those conditions amount to punishment of the detainee.'"[169] Again, all Plaintiff needs to show under *Bell v. Wolfish* is that "the condition of confinement is not reasonably related to a legitimate, non-punitive governmental objective."[170] As such, "[t]o prevail on [her] conditions-of-confinement claim, . . . [P]laintiff must show a condition—a 'rule,' a 'restriction,' an 'identifiable intended condition or practice,' or 'sufficiently extended or pervasive' 'acts or omissions' of jail officials—that is not reasonably related to a legitimate government objective and that caused the constitutional violation."[171] "A showing of express intent to punish is not required. Instead, such intent may be presumed where a policy is otherwise senseless."[172]

Plaintiff alleges that Sheriff Gautreaux and Warden Grimes:

- "exposed mentally ill pre-trial detainees, including . . . Cage, to dangerous, inhumane and unsanitary conditions of confinement so extensive and pervasive that they reflect a *de facto* policy . . . ."[173]

---

[167] *Id.* at 365.
[168] *Jones v. Dall. Cnty.*, No. 21-10617, 2022 WL 3334493, at *2 (5th Cir. Aug. 12, 2022) (citing *Bell*, 441 U.S. at 535).
[169] *Id.* (citing *Bell*, 441 U.S. at 535).
[170] *Scott*, 114 F.3d at 53 (citing *Bell*, 441 U.S. at 539).
[171] *Sanchez v. Young Cnty., Tex.* (*Sanchez II*), 956 F.3d 785, 791 (5th Cir. 2020) (quoting *Duvall v. Dall. Cnty.*, 631 F.3d 203, 207 (5th Cir. 2011) (quoting *Hare*, 74 F.3d at 645)).
[172] *Shepherd*, 591 F.3d at 454 (citing *Bell*, 441 U.S. at 539).
[173] Rec. Doc. 4, ¶ 229.

- "have a policy of using solitary confinement as punishment and a warehouse for those with serious mental illness, including suicidal detainees and prisoners."[174]

- "do not have a consistent monitoring or system to standardize the delivery of mental healthcare to prisoners on mental health observation or suicide watch or those on lockdown on the mental health line[,]" resulting in a *de facto* policy of "falsely document[ing] that EBRPP make[s] regular monitoring rounds when they do not."[175]

- "have a policy, practice or custom of not monitoring the healthcare system at EBRPP to ensure that basic medical and mental healthcare services, including pharmaceutical and medication management, are delivered to prisoners."[176]

- "have a policy, practice or custom of inadequate contracting for mental health and medication administration."[177]

She goes on to allege in paragraph 260 of her First Amended Complaint that

> there is a pattern of violations by Sheriff Gautreaux and Warden Grimes caused by customs that resulted in the violation of Cage's constitutional rights (and that of other detainees at EBR prison who are severely mentally ill or having suicidal ideations), including:
>
> (a) Operating and understaffed and/or inadequately staffed facility;
>
> (b) Operating the facility in a manner which was not designed to be operated in and which has led to reduced contact between staff and detainees;
>
> (c) Negligent retention of staff;
>
> (d) Failing to adequately train, supervise, monitor and discipline deputies in the need for and the manner in which to observe and evaluate detainees to identify their needs for mental health treatment, and in the need to and the manner in which to provide

---

[174] *Id.* at ¶ 231. *See also id.* at ¶ 230 ("The overuse of solitary confinement through explicit policies of the EBRPP, including of Kaddarrius Cage, and the failure of prison staff to monitor the mentally ill or suicidal detainees are both explicit and de facto policies that leave detainees unmonitored and unprotected, which have resulted in unconstitutional conditions and treatment so extended and pervasive that defendants Gautreaux and Grimes should have known of them. Such a practice not only denies necessary treatment, but it exacerbates prisoners' conditions and causes unnecessary pain and suffering. This is especially true of individuals with known serious mental health conditions, including Kaddarrius Cage.").
[175] *Id.* at ¶¶ 232–33.
[176] *Id.* at ¶ 235.
[177] *Id.* at ¶ 238.

proper medical treatment in connection with those needs so identified[;]

(e) Failing to properly maintain surveillance systems for monitoring detainees on mental health observation and/or suicide watch;

(f) Continuing to house detainees with severe mental health disorders and detainees with suicidal ideations when Sheriff Gautreaux and Warden Grimes know that such detainees should be transferred because the EBR prison is not the appropriate place for such individuals as the design is old and is not susceptible to constant or frequent monitoring as that is required of severely mentally ill detainees and detainees with suicidal ideations;

(g) Failing to transfer detainees with severe mental health disorders and detainees with suicidal ideations to other jails that are more equipped to monitor and provide care to such detainees in a safe environment;

(h) Failing to hire a monitor to supervise employees of Turn Key Health, LLC;

(i) Failing to remove bars from the M and N line, where suicidal and severely mental health detainees are kept despite the known risk of the bars being used as anchors for hanging such detainees;

(j) Failing to adequately contract for prescription medication management and mental healthcare;

(k) Continuing to use Turn key Health when in over [a] year's time there has already been nine (9) deaths;

(l) Continuing to house inmates despite knowing of inhumane conditions at the EBRPP when they could have been transferred to a humane prison;

(m) Only providing very limited use of telephone for severely mentally housed in lockdown or solitary confinement; and

(n) Utilizing lockdown or solitary confinement for the severely mentally ill, and suicidal patients despite knowing that solitary confinement exacerbates the health and wellbeing of such prisoners[178]

---

[178] *Id.* at ¶ 260.

Likewise, though in the context of episodic acts or omissions, Plaintiff alleges:

- Sheriff Gautreaux and Warden Grimes knew of the risks associated with housing mentally ill inmates at EBRPP;[179]

- Warden Grimes knew that 24-hour personal surveillance was needed on the N line;[180]

- Sheriff Gautreaux and Warden Grimes had a duty to provide training for suicide prevention and/or treatment of detainees with severe mental health disorders.[181]

Importantly, here, the Fifth Circuit "has repeatedly held that municipalities or supervisors may face liability under section 1983 where they breach duties imposed by state or local law."[182] "The critical point for this case is that such liability may result if municipal officials have actual or constructive knowledge of constitutional violations and fail to carry out their duty to correct them."[183] Most of Plaintiff's conditions of confinement allegations are attributable to the City/Parish, not Sheriff Gautreaux and Warden Grimes.[184] Again, "the general statutory scheme is that the parish is responsible for the expenses of establishing, maintaining and operating a jail and for all expenses of feeding, clothing, and providing medical treatment to prisoners."[185] Plaintiff's First Amended Complaint is piecemealed in this respect. Though some conditions are attributable to Sheriff Gautreaux and Warden Grimes, none are unconstitutional conditions of confinement which give rise to liability under *Monell*. The Court will address the alleged conditions attributable to Sheriff Gautreaux and Warden Grimes in turn.

---

[179] *Id.* at ¶¶ 270, 276, 277, 278, 284.
[180] *Id.* at ¶ 284.
[181] *Id.* at ¶ 294.
[182] *O'Quinn*, 773 F.2d at 609 (citations omitted).
[183] *Id.* (citation omitted).
[184] The Court previously found that Plaintiff alleged a sufficient conditions of confinement claim against the City/Parish. *See* Rec. Doc. 65.
[185] *Boudreaux*, 2009 WL 1787678, at *4 (citing *Amiss*, 411 So. 2d at 1141).

a. <u>Failure to transfer detainees with severe mental health disorders/suicidal ideations</u>

Plaintiff asserts that Sheriff Gautreaux and Warden Grimes violated Cage's constitutional rights by housing him and others with severe mental illness and/or suicidal ideations at EBRPP.[186] However, pretrial detainees have "no constitutional right to be housed in any particular facility or transferred from one facility to another, even if conditions and amenities in one may be preferable to another."[187] "The Due Process Clause does not, by itself, endow a prisoner with a protected liberty interest in the location of his confinement."[188] The Fifth Circuit has specifically held that a pretrial detainee has "no Fourteenth Amendment liberty interest in being imprisoned at one carcel rather than [an]other, even if 'life in one is much more disagreeable than in another . . . .'"[189] Therefore, the Sheriff Defendants' motion is granted in this respect.

b. <u>Solitary confinement and limited telephone use</u>

Plaintiff also alleges various unconstitutional conditions of confinement with respect to Cage being housed on the N line, namely that he was in insolation, or "solitary confinement," with limited telephone use. As to EBRPP's alleged telephone policy, "[r]estrictions or loss of an inmate's telephone or visitation privileges 'provide no basis for a claim of the denial of constitutional rights.'"[190] Likewise, Plaintiff's allegations as to solitary confinement do not suggest that EBRPP's policy rises to the level of an

---

[186] Rec. Doc. 4, ¶¶ 223, 224, 225, 260(f), (g), (l).
[187] *Roberts v. Sheriffs Dep't Jackson Par.*, No. 24-57, 2024 WL 1417968, at *1 (W.D. La. Apr. 1, 2024) (citing *Olim v. Wakinekona*, 461 U.S. 238, 245–46 (1983); *Fuselier v. Mancuso*, 354 F. App'x 49, 49–50 (5th Cir. 2009)).
[188] *Yates v. Stalder*, 217 F.3d 332, 334 (5th Cir. 2000); *Meachum v. Fano*, 427 U.S. 215, 225 (1976).
[189] *Maddox v. Thomas*, 671 F.2d 949, 950 (5th Cir. 1982) (quoting *Meachum*, 427 U.S. at 225).
[190] *Graves v. Williams*, No. 23-1685, 2024 WL 3548317, at *4 (M.D. La. June 10, 2024), *report and recommendation adopted*, No. 23-1685, 2024 WL 3543422 (M.D. La. July 25, 2024) (quoting *Palmisano v. Bureau of Prisons*, 258 F. App'x. 646, 648 (5th Cir. 2007)).

unconstitutional condition of confinement. To succeed in her claim, Plaintiff must allege that this policy is unrelated to a legitimate governmental objective.[191] She fails to do so.

In the context of her episodic acts and omissions claim, Plaintiff alleges that

> [b]ased on the number of suicides and deaths due to medical reasons at East Baton Rouge Parish Prison, the Conditions of East Baton Rouge Parish Prison are sufficiently extended or pervasive acts and/or omissions of Defendants Sheriff Gautreaux and Warden Grimes—that is not reasonably related to a legitimate government objective and that caused the constitutional violation to Kaddarrius Cage.[192]

This allegation is unclear and wholly conclusory. Plaintiff makes no further allegations that would suggest EBRPP's solitary confinement policy is "arbitrary or purposeless."[193] Her allegations instead focus on (1) the overall nature of Cage's prison cell,[194] and (2) literature discussing how suicidal detainees should not be held in solitary confinement.[195] Therefore, the Sheriff Defendant's motion is granted as to these claims.

### c. Failure to monitor

Plaintiff further alleges that Sheriff Gautreaux and Warden Grimes' failure to monitor constitutes an unconstitutional condition of confinement. In particular, she alleges that they (1) failed to provide sufficient staff to monitor and protect detainees like Cage;[196]

---

[191] *Sanchez II*, 956 F.3d at 791.

[192] Rec. Doc. 4, ¶ 413.

[193] *See Bell*, 441 U.S. at 538–39 ("Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.' Conversely, if a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees. Courts must be mindful that these inquiries spring from constitutional requirements and that judicial answers to them must reflect that fact rather than a court's idea of how best to operate a detention facility." (footnotes and citations omitted)).

[194] For example, she alleges that Cage was in "solitary confinement" in a cell that "was dark, littered with scrawlings from precious detainees on the walls including the words, 'blood,' 'crips' and die.'" Rec. Doc. 4, ¶ 58.

[195] *Id.* at ¶¶ 209, 213, 214.

[196] *Id.* at ¶¶ 234, 260(a).

(2) negligently retained of staff;[197] and (3) did not implement 24-hour video and/or personal surveillance on the N line.[198] As the Sheriff Defendants argue, Plaintiff's failure to monitor claims are "more appropriately addressed as an episodic act or omission claim."[199] "The complained of harm is the particular omission of one or more officials, in this case the alleged failure of the named Sheriff deputies working at . . . EBRPP on the date of Cage's suicide, to adequately monitor him."[200] As analyzed above, Plaintiff failed to allege constitutional violations against Sheriff Gautreaux and Warden Grimes' subordinates and, in turn, failed to allege an episodic acts or omissions claim against Sheriff Gautreaux and Warden Grimes as supervisors. Further, allegations with respect to 24-hour personal surveillance and/or video monitoring are conditions attributable to the City/Parish as the entity tasked with funding and physically maintaining EBRPP.[201] Therefore, the Sheriff Defendant's motion is granted in this respect as well.

## C. Damages

Plaintiff makes a compensatory damages claim "for the twelve days of wanton infliction of pain and suffering [Cage] sustained while subjected to inhumane and unconstitutional conditions at . . . EBRPP."[202] As the Sheriff Defendants point out,[203] the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(e), bars "a prisoner plaintiff . . . from the receipt of compensatory damages for mental or emotional injury in the absence

---

[197] *Id.* at ¶ 260(c).
[198] *Id.* at ¶¶ 237, 260(e).
[199] Rec. Doc. 37-1, p. 45.
[200] *Id.*
[201] La. R.S. § 15:702. *See also Boudreaux*, 2009 WL 1787678, at *4 (citing *Amiss*, 411 So. 2d at 1141); *O'Quinn*, 773 F.2d at 609 ("Where a municipal body is vested with this sort of fiscal obligation to a jail, its liability for insufficient funding or maintenance will depend on its knowledge of conditions at the jail."); La. R.S. § 15:704 ("Each sheriff shall be the keeper of the public jail of his parish, and shall by all lawful means preserve the peace and apprehend all disturbers thereof, and other public offenders.").
[202] Rec. Doc. 4, ¶ 258.
[203] Rec Doc. 37-1, p. 53.

of some showing of physical injury."[204] No physical injury is alleged here. Plaintiff concedes this point in her Opposition, asking the Court to "give [her] an opportunity to amend [her] complaint" in this respect.[205]

In any event, Plaintiff's conditions of confinement claim for pain and suffering unrelated to Cage's death is time-barred.[206] As the Sheriff Defendants explain, Cage was first subject to these conditions on May 19, 2023, when he was assigned to his cell on the N line.[207] On that day, "he had reason to know of the alleged injury giving rise to this claim[,]" and, thus, his claim began to accrue, giving him one year from May 19, 2023, to file suit.[208] Plaintiff did not file suit until May 29, 2024.[209] Plaintiff does little to refute this argument. She cites no authority and instead asserts the following:

> Cage did not know he had a claim on May 19, 2023 when he was jailed. After all, he was having auditory and visual hallucinations and was not operating in reality. Cage was seeing dark figures and hearing voices that were not even there. Therefore, plaintiff's claims are not time barred.[210]

Plaintiff's argument boils down to the assertion that Cage could not have known he was enduring pain and suffering on May 19, 2023, because he was hallucinating and "not operating in reality." Yet, Plaintiff's allegations suggest Cage exhibited such behaviors throughout his time at EBRPP. Thus, if Cage was unaware of his pain and suffering on May 19, 2023, he was unaware of his pain and suffering throughout his entire time at EBRPP, suggesting he may not have endured a mental or emotional injury at all. Therefore, the Sheriff Defendants' motion is granted as to this issue.

---

[204] *Wright v. La. Dep't of Corr.*, 738 F. Supp. 3d 711, 716 (M.D. La. 2024).
[205] Rec. Doc. 52, p. 43.
[206] Rec. Doc. 37-1, pp. 54–55.
[207] *Id.*
[208] *Id.*
[209] *Id.*
[210] Rec. Doc. 52, p. 43.

The Sheriff Defendants' motion is also granted as to Plaintiff's claim for punitive damages. Plaintiff seeks punitive damages for the "willful violation of . . . Cage's federally protected rights."[211] Given that she failed to allege Section 1983 claims against any Sheriff Defendant, her claim for punitive damages fails as well.

## IV.    STATE LAW CLAIMS

Plaintiff asserts various Louisiana state law claims against Sheriff Gautreaux, Warden Grimes, Lt. McDowell, Cpl. Jackson, Deputy Walker, Cpl. Morris, Deputy Jenkins, and Detective Bankston, including negligence,[212] respondeat superior, wrongful death, and a survival action. "Louisiana[] negligence claims are governed by a duty-risk analysis under Louisiana Civil Code article 2315."[213] "To establish a claim for negligence, a plaintiff must establish five elements: duty, breach, cause-in-fact, scope of the duty/risk, and damages."[214] "In Louisiana, prison authorities owe a duty of reasonable care to protect inmates from harm."[215] "However, in order for prison officials to have a duty to protect inmates from suicide, there must be evidence that they 'either knew or should have known of an inmate's suicidal tendencies.'"[216] "Thus, the duty of prison authorities does not extend to protecting inmates from unknown suicidal tendencies."[217]

---

[211] Rec. Doc. 4, ¶ 432.

[212] The Court notes Plaintiff's assertion that "[a]t all times pertinent herein, the defendants, individually and collectively, acted intentionally, maliciously, recklessly and/or negligently towards the deceased Kaddarrius Cage." *Id.* at ¶ 426. Finding no allegations regarding the intentional nature the Sheriff Defendants' alleged acts, the Court construes Plaintiff's state law claims as rooted in negligence rather than intentional torts.

[213] *Newsome-Goudeau v. Louisiana*, No. 17-909, 2020 WL 5665615, at *6 (W.D. La. Sept. 22, 2020) (citing *Chanthasalo v. Deshotel*, 2017-CA-0521 (La. Ct. App. 4 Cir. 12/27/17); 234 So. 3d 1103, 1107).

[214] *Id.* (citing *Chanthasalo*, 234 So. 3d at 1107).

[215] *Id.* (citing *Harper v. Goodwin*, 41,053 (La. Ct. App. 2 Cir. 5/17/06); 930 So. 2d 1160, 1163).

[216] *Id.* (quoting *Leonard v. Torres*, 2016-1484 (La. Ct. App. 1 Cir. 9/26/17); 393 So. 3d 363, 369).

[217] *Id.*

### A.  Medical Care and General Conditions at EBRPP

Plaintiff alleges that "Cage suffered conscious pain and suffering, both physical and mental, for the 12 days he was subjected to inhumane incarceration without his needed medicine, being in solitary confinement in a rat-infested, deplorable cell, which led him into a steep mental health decline, depression and ultimately his demise."[218] Likewise, "Cage's death was a direct result of Gautreaux's failure to provide adequate and reasonable mental health care and housing."[219]

Plaintiff's negligence claims in these respects fail for lack of duty and/or breach of duty. Again, the general conditions at EBRPP as a facility are attributable to the City/Parish. Under Louisiana law, "[t]he governing authority of each parish shall be responsible for the physical maintenance of all parish jails and prisons[,]"[220] while Gautreaux, as Sheriff, is "the keeper of the public jail of his parish, and shall by all lawful means preserve the peace and apprehend all disturbers thereof, and other public offenders."[221] Plaintiff attempts to use Sheriff Gautreaux's knowledge of the deplorable conditions at EBRPP as a way to hold him liable for them. However, her allegations as to Sheriff Gautreaux's knowledge instead illustrate the statutorily delegated division of power between Sheriff Gautreaux and the City/Parish.

In her First Amended Complaint, Plaintiff quotes Sheriff Gautreaux, asserting that he has stated: "The old part of the prison is really in deplorable condition. Issues with ventilation, with plumbing. Really laid out in the old way that poses a problem from a

---

[218] Rec. Doc. 4, ¶ 425.
[219] *Id.* at ¶ 428.
[220] La. R.S. § 15:702.
[221] *Id.* § 15:704.

safety standpoint for the safety of the inmates in the prison . . .".[222] She further alleges that "[i]n August of 2015 Sheriff Gautreaux concluded the current EBR prison which dates back to the 1960s is 'not adequate for providing health care.'"[223] Likewise, "[i]n 2015, Gautreaux was reported to have requested a new jail 'for years' and that officials 'long ago identified the problem: a dilapidated facility that is ill-equipped to hold . . . mentally ill who are booked.'"[224] Plaintiff also alleges that "Gautreaux told the Metro Council in 2018 he wishes he 'wasn't even in the prison business' and that he feared that federal authorities would crack down on the jail if changes weren't made soon, a concern he still shares today."[225] Most telling,

> [e]ven as late as April 23, 2024 Sheriff Gautreaux wrote a letter to the mayor and Metro Council members, noting floors at the EBRPP covered in raw sewage and extensive mold. An inspection of the facility by the Louisiana Department of Health on May 15, 2024 notes plumbing issues and signs of mildew. As of May 17, 2024 according to the advocate, the Mayor had yet to respond to Sheriff Gautreaux's letter.[226]

The reality is clear: remedying the deplorable, inhumane conditions at EBRPP is in the hands of the City/Parish, not Sheriff Gautreaux.

As to Plaintiff's medical negligence claim, Sheriff Gautreaux's duty to "be the keeper of the public jail of his parish"[227] is subject to the City/Parish's duty of "appoint[ing] annually a physician who shall attend the prisoners who are confined in the parish jails,[]" or "[i]n lieu of appointing a physician, . . . contract with a health care provider . . . ."[228] Sheriff Gautreaux carried out his duty through implementing the prison's at-home

---

[222] Rec. Doc. 4, ¶ 153.
[223] *Id.* at ¶ 198(m).
[224] *Id.* at ¶ 198(n).
[225] *Id.* at ¶ 198(hh).
[226] *Id.* at ¶ 198(yy).
[227] La. R.S. § 15:704.
[228] *Id.* § 15:703.

medication policy. The policy was to be carried out by Turn Key—the City/Parish's contracted health care provider. Sheriff Gautreaux did not, nor did any Sheriff Defendant, breach their duty owed to Cage through Turn Key's failure to carry out EBRPP's at-home medication policy.

Louisiana law prescribes how rights are to be vindicated in such scenarios. When the City/Parish contracted Turn Key to provide medical care at EBRPP, "[t]he parish and its governing authority [could not] be liable for any action arising as a result of the actions or inactions of the physician or health care provider . . . unless the governing authority exercise[d] gross negligence or willful misconduct" in contracting Turn Key "and such gross negligence or willful misconduct was a substantial factor in causing the injury."[229] Otherwise, Plaintiff's claims "as a result of the actions or inactions of [Turn Key] in the performance or nonperformance of health care services" were to "be governed by the provisions of R.S. 40:1231.1 et seq.[,]" Louisiana's medical malpractice law.[230] Thus, absent gross negligence or willful misconduct on behalf of the City/Parish, claims with respect to the actions or inactions of Turn Key and/or its employees must be brought against them directly, not a Sheriff Defendant.

Considering the foregoing, the Sheriff Defendants' motion is granted as to Plaintiff's medical care and general conditions at EBRPP negligence claims. Accordingly, these claims are dismissed.

### B. Failure to Protect and Respondeat Superior

Plaintiff also asserts a negligence claim for Lt. McDowell, Cpl. Jackson, Deputy Walker, Cpl. Morris, Deputy Jenkins, Detective Bankston, Sheriff Gautreaux, and Warden

---

[229] *Id.* § 15:703(D).
[230] *Id.* § 15:703(C).

Grimes failing to protect Cage.[231] She alleges that (1) they knew of EBRPP's deplorable conditions; (2) they owed a duty of protection to Cage; (3) they breached that duty by "placing him on the N line in a cell with bars, issuing him a cloth shirt that could be used as a ligature[,] and by not checking on him for over an hour despite his obvious mental illness; and (4) their negligence caused Cage to hang himself.[232]

"[D]eputies act with deliberate indifference when they choose not to take certain action 'with the expectation that some harm would result,' but negligence occurs when deputies fail to act as a reasonably prudent person under the circumstances."[233] When reading Plaintiff's First Amended Complaint as a whole and in a light most favorable to her, the Court finds that she has alleged a failure to protect claim against Lt. McDowell, Cpl. Jackson, Deputy Walker, Cpl. Morris, Deputy Jenkins, and Detective Bankston. She alleges that Lt. McDowell, Cpl. Jackson, Deputy Walker, Cpl. Morris, and Deputy Jenkins failed to follow monitoring protocols on the N line, "which was a cause in fact of Cage's death and increased pain and suffering."[234] She likewise alleges that Detective Bankston knew Cage faced a substantial risk of harm but "failed to act as a reasonably prudent person under the circumstances"[235] by way of not relaying relevant information about Cage's mental and physical state upon his arrival to EBRPP. Therefore, the Sheriff Defendants' Motion to Dismiss in this respect is denied.

As to Warden Grimes, Plaintiff makes no allegation that he was personally involved in Cage's suicide or time at EBRPP. Her allegations against Warden Grimes concern his

---

[231] Rec. Doc. 4, ¶ 429.
[232] *Id.*
[233] *Jordan*, 593 F. Supp. 3d at 368.
[234] Rec. Doc. 4, ¶ 402.
[235] *Jordan*, 593 F. Supp. 3d at 368.

relationship to his subordinates' conduct. Under Louisiana's doctrine of respondeat superior, an employer is liable for the acts of its employees committed in the course and scope of their employment.[236] Plaintiff does not allege a respondeat superior claim against Warden Grimes. Therefore, Plaintiff's state law claims against Warden Grimes are dismissed.

Plaintiff does, however, assert a respondeat superior claim against Sheriff Gautreaux. The Court finds that Plaintiff's claim against Sheriff Gautreaux survives. She, as discussed, sufficiently alleges that Lt. McDowell, Cpl. Jackson, Deputy Walker, Cpl. Morris, Deputy Jenkins, and Detective Bankston were negligent. She further alleges that these individual "were in the course and scope of their employment as officers of Gautreaux during the time of the arrest of . . . Cage and during the course of his confinement."[237] Therefore, the Sheriff Defendants' Motion to Dismiss in this respect is denied.

## V.    LEAVE TO AMEND

Considering the deficiencies described above, the Court will grant Plaintiff leave to amend her First Amended Complaint.[238] The Federal Rules of Civil Procedure provide that "[t]he court should freely give leave when justice so requires."[239] Moreover, "courts should ordinarily grant a plaintiff at least one opportunity to amend before dismissing a complaint with prejudice for failure to state a claim."[240] Nevertheless, Plaintiff is cautioned that any amendments must comport with this Court's Ruling, and Plaintiff does not have

---

[236] *LeBrane v. Lewis*, 292 So.2d 216, 217–18 (La. 1974).
[237] Rec. Doc. 4, ¶ 421.
[238] Rec. Doc. 4.
[239] Fed. R. Civ. P. 15(a)(2).
[240] *Matthews v. Stolier*, No. 13-6638, 2014 WL 5214738, at *12 (E.D. La. Oct. 14, 2014) (citing *Hart v. Bayer Corp.*, 199 F.3d 239, 247 n.6 (5th Cir. 2000)).

leave to add new parties or claims; she may only amend to cure the deficiencies set forth herein, if possible.[241]

## VI.    CONCLUSION

For the foregoing reasons, the Motion to Dismiss[242] filed by the Sheriff Defendants is GRANTED IN PART AND DENIED IN PART. As to Plaintiff's state law Failure to Protect claim against Lt. McDowell, Cpl. Jackson, Deputy Walker, Cpl. Morris, Deputy Jenkins, and Detective Bankston and Respondeat Superior claim against Sheriff Gautreaux, the Motion is DENIED. In all other respects, the Motion is GRANTED. Plaintiff is granted leave to amend her First Amended Complaint[243] and is hereby granted twenty-one (21) days leave from the date of this Ruling to state a claim, if possible.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this 25th day of September, 2025.

_____
**SHELLY D. DICK**
**CHIEF DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**

---

[241] If Plaintiff wishes to amend more broadly, she must file a motion under the applicable Federal Rules of Civil Procedure.
[242] Rec. Doc. 37.
[243] Rec. Doc. 4.