## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

KENYETTA RICHARD, as natural tutrix to Z.C.,     CIVIL ACTION
minor child of KADDARRIUS CAGE

VERSUS                             24-419-SDD-EWD

SHERIFF SID GAUTREAUX, ET AL.

## RULING

Before the Court is a Motion to Dismiss filed by defendants Turn Key Health Clinics, LLC ("Turn Key"), Cepeada Woodson ("Woodson"), Amy Smith ("Smith"), and Alysius Allen ("Allen"), (collectively, the "Turn Key Defendants").[1] Plaintiff Kenyetta Richard, as natural tutrix to Z.C., minor child of Kaddarrius Cage ("Cage"), ("Plaintiff") opposes the motion.[2] The Turn Key Defendants have not filed a reply. The Court has reviewed the allegations, the arguments of the parties, and the law, and is prepared to rule. For the following reasons, the Turn Key Defendants' motion is granted in part and denied in part.

## I.     BACKGROUND

This case concerns the tragic death-by-suicide of Cage, a pretrial detainee at East Baton Rouge Parish Prison ("EBRPP") from May 19, 2023, to May 31, 2023.[3] It is alleged that Cage suffered from various mental illnesses and hung himself from the bars of his cell while in solitary confinement on EBRPP's notorious "N line."[4] During his time at EBRPP, Cage allegedly did not receive any mental health treatment nor have access to

---

[1] Rec. Doc. 44.
[2] Rec. Doc. 57.
[3] Rec. Doc. 65, p. 1.
[4] *Id.*

his five antipsychotic prescription medications.[5] Likewise, Cage was allegedly subject to various "inhumane" living conditions at a prison long recognized as ill-equipped to meet the needs of mentally ill inmates.[6]

On May 29, 2024, Plaintiff brought suit against multiple defendants asserting violations of Cage's civil rights under 42 U.S.C. § 1983, a survival action, and a claim for his wrongful death.[7] These defendants include: (1) the Parish of Baton Rouge/the City of Baton Rouge (the "City/Parish"); (2) Sheriff Sid J. Gautreaux, III, in his official and individual capacities as Sheriff of East Baton Rouge Parish; (3) Warden Dennis Grimes, in his official and individual capacities as Warden of EBRPP; (4) Lieutenant Rashie McDowell, individually; (5) Corporal Ryan Jackson, individually; (6) Corporal Christian Morris, individually; (7) Deputy Jenkins, individually; (8) Deputy Hollis Walker, individually; (9) Detective Will Bankston, individually; (10) Cpt. Leonard Harris, individually; (11) American Alternative Insurance Corporation; (12) Turn Key—the private entity contracted to provide health care to pretrial detainees at EBRPP; (13) Woodson, in her individual capacity as an employee of Turn Key; (14) Nurse Paris Moore ("Nurse Moore"), in her individual capacity as an employee of Turn Key; (15) Smith, in her individual capacity as an employee of Turn Key; and (16) Allen, in her individual capacity as an employee of Turn Key.[8]

On July 24, 2024, the City/Parish filed a Motion to Dismiss the claims asserted against it.[9] The Court denied the City/Parish's motion on March 14, 2025.[10] In its Ruling,

---

[5] *Id.*
[6] *Id.* at pp. 1–2.
[7] Rec. Doc. 1, ¶ 1.
[8] Rec. Doc. 4.
[9] Rec. Doc. 19.
[10] Rec. Doc. 65.

the Court thoroughly summarized Plaintiff's factual allegations against all parties.[11] The Court incorporates that summary herein and will reference and elaborate on Plaintiff's allegations when analyzing the Turn Key Defendants' request for dismissal. On August 30, 2024, Sheriff Sid J. Gautreaux, III, Warden Dennis Grimes, Lieutenant Rashie McDowell, Corporal Ryan Jackson, Corporal Christian Morris, Deputy Jenkins, Deputy Hollis Walker, Detective Will Bankston, and Cpt. Leonard Harris (collectively, the "Sheriff Defendants") filed a Motion to Dismiss the claims asserted against them.[12] The Court granted the Sheriff Defendants' motion in part and denied it in part on September 25, 2025.[13]

The Turn Key Defendants now seek dismissal of the following claims asserted against them:

- **Count 1:** A 42 U.S.C § 1983 violation for the pervasive, extended deficiencies and misconduct in the conditions of confinement, which constitute a *de facto* policy that amounted to punishment before Cage was judged guilty in violation of the Fourteenth Amendment Due Process Clause against Turn Key.[14]

- **Count 2:** A *Monell* claim under 42 U.S.C § 1983 for a custom of unsafe, unsanitary, deficient and hazardous conditions of confinement for vulnerable, mentally ill pretrial detainees in violation of the Fourteenth Amendment Due Process Clause against Turn Key.[15]

- **Count 3:** A 42 U.S.C § 1983 violation for failing to protect Cage from a known and substantial risk of suicide and/or serious mental health problems in violation of the Fourteenth Amendment Due Process Clause against all Turn Key Defendants and Nurse Moore.[16]

---

[11] *Id.* at pp. 1–12.
[12] Rec. Doc. 37.
[13] Rec. Doc. 67.
[14] Rec. Doc. 4, p. 76.
[15] *Id.* at p. 86.
[16] *Id.* at p. 90.

- **Count 4:** A 42 U.S.C § 1983 violation for deliberate indifference in violation of the Fourteenth Amendment Due Process Clause against Nurse Moore, Woodson, Smith, and Allen.[17]

- **Count 5:** A *Monell* claim under 42 U.S.C § 1983 for failing to protect Cage from a known and substantial risk of suicide and/or serious mental health problems against Turn Key.[18]

## II.    12(B)(6) STANDARD

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[19] The Court may consider "the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[20] "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[21]

In *Bell Atlantic Corp. v. Twombly*, the United States Supreme Court set forth the basic criteria necessary for a complaint to survive a Rule 12(b)(6) motion to dismiss: "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do."[22] A complaint is also insufficient if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[23] However, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

---

[17] *Id.* at p. 99.

[18] *Id.* at p. 103.

[19] *In re Katrina Canal Breaches Litig.*, 495 F. 3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit,* 369 F. 3d 464, 467 (5th Cir. 2004)).

[20] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F. 3d 757, 763 (5th Cir. 2011) (internal citations omitted).

[21] *In re Katrina Canal Breaches Litig.*, 495 F. 3d at 205 (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).

[22] *Twombly*, 550 U.S. at 545 (internal citations and brackets omitted).

[23] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).

reasonable inference that the defendant is liable for the misconduct alleged."[24] In order to satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that the defendant has acted unlawfully."[25] "Furthermore, while the court must accept well-pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"[26] "On a motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"[27]

### III.    LAW AND ANALYSIS

"Section 1983 imposes liability on anyone who, under color of state law, deprives a person 'of any rights, privileges, or immunities secured by the Constitution and laws.'"[28] In order to state a claim under 42 U.S.C. § 1983, the plaintiff must establish two elements: "(1) that the conduct in question deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States; and (2) that the conduct complained of was committed by a person acting under color of state law."[29] As for the first element, 42 U.S.C. § 1983 only imposes liability for violations of rights protected by the United States Constitution—not for violations of duties of care arising out of tort law.[30] As to the second element, a "plaintiff must identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged."[31]

---

[24] *Id.*
[25] *Id.*
[26] *Taha v. William Marsh Rice Univ.*, No. 11-2060, 2012 WL 1576099, at *2 (S.D. Tex. May 3, 2012) (quoting *Southland Sec. Corp. v. Inspire Ins. Sols., Inc.*, 365 F. 3d 353, 361 (5th Cir. 2004)).
[27] *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).
[28] *Blessing v. Freestone*, 520 U.S. 329, 340 (1997).
[29] *Jones v. St. Tammany Par. Jail*, 4 F. Supp. 2d 606, 610 (E.D. La. 1998). *See also Elphage v. Gautreaux*, 969 F. Supp. 2d 493, 500 (M.D. La. 2013).
[30] *Griffith v. Johnston*, 899 F.2d 1427, 1436 (5th Cir. 1990).
[31] *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995).

"The performance of official duties creates two potential liabilities, individual-capacity liability for the person and official-capacity liability for the municipality."[32] "Official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent."[33] "To be liable in one's official capacity under Section 1983, the defendant must have been delegated policy-making authority under state law."[34] "[A] state actor may have Section 1983 liability in his/her individual capacity for actions causing the deprivation of a federal right taken under color of state law."[35]

All Turn Key Defendants have been sued in their individual capacities. Turn Key has also been sued in its official capacity. There is no dispute that these defendants were acting under color of law in their alleged conduct.[36] Thus, the remaining consideration is whether Plaintiff has satisfied the first requirement to state a claim under Section 1983, namely to state a claim of a constitutional violation.

### A. Constitutional Rights of Pretrial Detainees, In General

"[T]he Fourteenth Amendment protects pretrial detainees' right to medical care and to 'protection from known suicidal tendencies.'"[37] In evaluating constitutional claims by pretrial detainees, courts in the Fifth Circuit distinguish between challenges to general conditions, practices, rules, or restrictions of confinement and challenges to episodic acts or omissions by jail officials.[38] Plaintiffs may plead both theories in the alternative.[39] Here,

---

[32] *Turner v. Houma Mun. Fire & Police Civil Serv. Bd.*, 229 F.3d 478, 484 (5th Cir. 2000).

[33] *Coleman v. E. Baton Rouge Sheriff's Off.*, 2014 WL 5465816, at *3 (M.D. La. Oct. 28, 2014).

[34] *Id.*

[35] *Id.*

[36] See *Belcher v. Lopinto*, 492 F. Supp. 3d 636, 651 (E.D. La. 2020), in which the court explained that a "private corporation contracted to operate the medical services within" a state prison, as well as its employees, are "subject to liability as state actors under § 1983."

[37] *Est. of Bonilla by & through Bonilla v. Orange Cnty., Tex.*, 982 F.3d 298, 304 (5th Cir. 2020) (quoting *Baldwin v. Dorsey*, 964 F.3d 320, 326 (5th Cir. 2020)).

[38] *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 643 (5th Cir. 1996) (en banc).

[39] *Shepherd v. Dall. Cnty.*, 591 F.3d 445, 452 n.1 (5th Cir. 2009).

Plaintiff seeks recovery against Turn Key under both theories and Woodson, Smith, and Allen for episodic acts or omissions.[40]

A conditions of confinement claim "is a constitutional attack on general conditions, practices, rules, or restrictions of pretrial confinement."[41] In such cases, the harm is caused by the condition itself.[42] "A condition of confinement is 'usually the manifestation of an explicit policy or restriction,' although a condition may also reflect an unstated or *de facto* policy, as evidenced by a pattern of acts or omissions 'sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by [officials], to prove an intended condition or practice.'"[43]

In a conditions of confinement claim, the "reasonable relationship test of *Bell v. Wolfish* is apposite."[44] According to that test, "a constitutional violation exists only if we [] find that the condition of confinement is not reasonably related to a legitimate, non-punitive governmental objective."[45] According to the Fifth Circuit, "[a] showing of express intent to punish is not required. Instead, such intent may be presumed where a policy is otherwise senseless."[46] As the court framed this notion in another case:

> A State's imposition of a rule or restriction during pretrial confinement manifests an avowed intent to subject a pretrial detainee to that rule or restriction. Likewise, even where a State may not want to subject a detainee to inhumane conditions of confinement or abusive jail practices, its intent to do so is nevertheless presumed when it incarcerates the detainee in the face of such known conditions and practices.[47]

---

[40] Plaintiff asserts an episodic acts or omissions claim in Court 3 and a deliberate indifference claim in Count 4. Given that deliberate indifference is an element of episodic acts or omissions (*see* discussion *infra*), the Court construes Counts 3 and 4 as one claim.

[41] *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997) (quoting *Hare*, 74 F.3d at 644).

[42] *Watts v. Pourciau*, No. 20-196, 2020 WL 7344613, at *2 (M.D. La. Nov. 16, 2020).

[43] *Zavala v. City of Baton Rouge/Par. of E. Baton Rouge*, No. 17-656, 2018 WL 4517461, at *9 (M.D. La. Sept. 20, 2018) (citing *Shepherd*, 591 F.3d at 452).

[44] *Scott*, 114 F.3d at 53 (citing *Bell v. Wolfish*, 441 U.S. 520 (1979)).

[45] *Id.* (citing *Bell*, 441 U.S. at 539).

[46] *Shepherd*, 591 F.3d at 454 (citing *Bell*, 441 U.S. at 539).

[47] *Hare*, 74 F.3d at 644.

By contrast, "where the complained-of harm is a particular act or omission of one or more officials, the action is characterized properly as an episodic act or omission case."[48] In such cases, a plaintiff "complains first of a particular act of, or omission by, the actor and then points derivatively to a policy, custom, or rule (or lack thereof) of the municipality that permitted or caused the act or omission."[49] For purposes of imposing liability on a defendant in his *individual* capacity in such a case, a pretrial detainee must establish that the defendant acted with *subjective* deliberate indifference.[50] A person acts with subjective deliberate indifference if (1) "he knows that an inmate faces a substantial risk of serious bodily harm; and (2) he disregards that risk by failing to take reasonable measures to abate it."[51] Said another way, "[t]o prove deliberate indifference, [a] Plaintiff[] must show that the defendants were 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' that the defendants actually 'dr[e]w the inference,' and that the defendants 'disregard[ed] that risk by failing to take reasonable measures to abate it.'"[52]

## B. Episodic Acts or Omissions

### 1. Woodson

Plaintiff makes various allegations as to Woodson. She contends that Woodson is a Turn Key employee who serves as the "interviewer" for EBRPP.[53] Woodson is alleged

---

[48] *Scott*, 114 F.3d at 53 (internal quotation marks omitted).
[49] *Id.*
[50] *Id.* at 54.
[51] *Anderson v. Dall. Cnty., Tex.*, 286 F. App'x 850, 860 (5th Cir. 2008) (citing *Gobert v. Caldwell,* 463 F.3d 339, 346 (5th Cir. 2006)).
[52] *Est. of Bonilla*, 982 F.3d at 305 (second and third alteration in original) (quoting *Hyatt v. Thomas*, 843 F.3d 172, 177 (5th Cir. 2016)).
[53] Rec. Doc. 4, p. 5.

to have conducted an intake screening of Cage on May 19, 2023.[54] During intake, Cage informed Woodson that he was hearing noises and/or voices and that he told EBRPP officials he was paranoid schizophrenic.[55] Cage made various other alleged representations during this screening, including that he received injections for his schizophrenia;[56] was currently taking medications;[57] was in a mental health facility the month prior;[58] was a recent victim of sexual abuse;[59] and had repetitive thoughts, flashbacks, and/or nightmares "related to PTSD or something terrible."[60] Woodson noted that Cage was "nervous and anxious" and that he had a large bump or knot on his forehead, which Cage was unsure of the source.[61] She allegedly wrote in Cage's intake file that he was "on meds during intake."[62] She proceeded to mark Cage as "highest priority (priority 1)."[63] Instead of taking Cage to a doctor, hospital, or registered nurse, Cage was brought to EBRPP's N line, "which houses severely mentally ill and suicidal patients in isolation or solitary confinement."[64]

Plaintiff further alleges that "Woodson was the intake personnel who assisted in . . . Cage's health or mental health screening" and that "she did not possess the proper licensure, certification, and qualifications necessary to make an accurate determination

---

[54] *Id*. at ¶ 25.
[55] *Id*.
[56] *Id*. at ¶ 26.
[57] *Id*. at ¶ 27.
[58] *Id*. at ¶ 26.
[59] *See id*. at ¶ 29. It was also noted during his intake screening that Cage had blood on his shorts. *Id*.
[60] *Id*. at ¶ 28.
[61] *Id*. at ¶¶ 30, 33.
[62] *Id*. at ¶ 35.
[63] *Id*.
[64] *Id*. at ¶ 31. *See also id*. at ¶ 73 ("The M and N line of the EBR prison, where Kaddarrius Cage was housed, has historically been used to house those pre-trial detainees on suicide watch and those that are acutely mentally ill, according to EBRPP policy and procedure."); *id*. at ¶ 211 ("Indeed, written policy and procedure states that prisoners on suicide watch or mental health observation must be placed on lockdown, in other words, solitary confinement.").

of his mental health needs, including but not limited to whether or not he was suicidal or [in] dire need of his medications."[65] Considering so, Plaintiff has failed to allege that Woodson had the requisite knowledge to be deliberately indifferent to Cage's serious medical needs. This allegation instead suggests that Woodson did not know Cage "face[d] a substantial risk of serious bodily harm" and thus could not have "disregard[ed] that risk by failing to take reasonable measures to abate it."[66] Therefore, the Turn Key Defendant's motion is granted as to Woodson, and Plaintiff's claims against Woodson are dismissed.

### 2. Allen

Plaintiff alleges that Allen is a Turn Key employee who serves as a licensed professional counselor at EBRPP.[67] In this role, Allen allegedly "cannot counsel a detainee out of paranoid schizophrenia or a mania of bipolar disorder"[68] and has "no ability to prescribe powerful antipsychotics to control paranoid schizophrenia or bipolar disorder."[69] Plaintiff alleges Allen noted on May 23, 2023, that Cage stated "he was not able to use the free phone when he arrived, and he has not talked to his family members."[70] Likewise, Allen allegedly noted the following on May 25, 2023: "Mr. Cage's mother Kimberly Cage was calling to make sure Mr. Cage was alright because she has not heard from him since incarceration. She would like for us to have him call her."[71]

These allegations fall short of allowing the inference that Allen knew Cage "face[d] a substantial risk of serious bodily harm" and "disregard[ed] that risk by failing to take

---

[65] *Id.* at ¶ 173.
[66] *Anderson*, 286 F. App'x at 860 (citing *Gobert*, 463 F.3d at 346).
[67] Rec. Doc. 4, p. 5.
[68] *Id.* at ¶ 176.
[69] *Id.* at ¶ 177.
[70] *Id.* at ¶ 69.
[71] *Id.* at ¶ 70.

reasonable measures to abate it."[72] Plaintiff asserts that Moore, Smith, Woodson, and Allen were deliberately indifferent because they knew Cage "was a paranoid schizophreni[c] and had been unmedicated while at EBRPP, yet not one of them in the twelve days he was alive at EBRPP even attempted to get him an immediate referral to a physician, despite him admitting to hallucinations, or to verify his medications."[73] The specific factual allegations made against Allen do not support this conclusory allegation.[74] Plaintiff's only factual allegations as to Allen is that she (1) made two notes about Cage while he was at EBRPP, and (2) could not treat Cage's schizophrenia and bipolar disorder because she was a counselor.  Again, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[75] Plaintiff fails to do so as to Allen. As such, the Turn Key Defendant's motion is granted in this respect, and Plaintiff's claims against Allen are dismissed.

### 3.  Smith

Plaintiff alleges that Smith is a Turn Key employee who serves as a social worker at EBRPP.[76] Cage is alleged to have made various representations to Smith on May 20, 2023, including that it was his first time at the prison,[77] he could hear voices and "see[] black figures/people and other objects[,]"[78] he had been inpatient at several psychiatric

---

[72] *Anderson*, 286 F. App'x at 860 (citing *Gobert*, 463 F.3d at 346).
[73] Rec. Doc. 4, ¶ 408.
[74] *Martinez v. City of N. Richland Hills*, 846 F. App'x 238, 243 (5th Cir. 2021) ("Deliberate indifference . . . cannot be shown through the actions of the cumulative group. Instead, each named member of that group must be shown to have acted, independently, with deliberate indifference." (internal citation omitted)).
[75] *Id.*
[76] Rec. Doc. 4, p. 5.
[77] *Id.* at ¶ 39.
[78] *Id.* at ¶ 40.

facilities prior to his incarceration,[79] he had only received "'a few hours' of sleep" within the past 72 hours,[80] and that he had received injections to treat his schizophrenia prior to arriving at EBRPP.[81] In light of these representations, Smith allegedly marked Cage as being "cleared from MHO and placed on MH SPNH."[82]

Plaintiff alleges that Smith is a "non-medical employee" and "did not appreciate the impact of complete cessation of mental health medications on [Cage's] severe psychological disorders."[83] Cage's mental health appointment was scheduled for May 25, 2023,[84] but Smith deleted this appointment.[85] A rescheduled appointment was set for June 1, 2023, but Cage committed suicide the day before.[86] Cage did, however, see Nurse Moore a few hours before his death, and Nurse Moore marked Cage as being on "Mental Health Observation(N02)."[87]

Plaintiff's allegations do not support her claim that Smith was deliberately indifferent to Cage's serious medical needs. Even if Smith was "aware of facts which the inference could be drawn that a substantial risk of serious harm exist[ed,]"[88] alleging that she is a "non-medical employee"[89] who "did not appreciate the impact of complete cessation of mental health medications on [Cage's] severe psychological disorders"[90]

---

[79] *Id.* at ¶¶ 42, 44.
[80] *Id.* at ¶ 43.
[81] *Id.* at ¶ 44.
[82] *Id.* at ¶ 39. The Court notes that Plaintiff's allegations do not define these acronyms. The Turn Key Defendants note in briefing that "MHO" stands for "Mental Health Observation" and "MH SPNH" stands for "Mental Health Special Needs Housing." Rec. Doc. 44-1, p. 3.
[83] Rec. Doc. 4, ¶ 174.
[84] May 25, 2023, was six days after Cage's detention.
[85] *Id.* at ¶ 45.
[86] *Id.*
[87] *Id.* at ¶¶ 50–51.
[88] *Est. of Bonilla*, 982 F.3d at 305 (quoting *Hyatt*, 843 F.3d at 177).
[89] Rec. Doc. 4, ¶ 174.
[90] *Id.*

does not suggest that Smith "actually 'drew the inference'"[91] that Cage faced a substantial risk of serious harm. Therefore, the Turn Key Defendants' motion is granted in this respect, and the claims against Smith are dismissed.

In short, as to the individual Turn Key employees, Plaintiff defeats a finding that they were plausibly "deliberately indifferent" by pleading that they were essentially ignorant.

### 4. Turn Key

Plaintiff asserts episodic acts or omissions[92] and *Monell*[93] claims against Turn Key. "The test to determine liability for a private prison-management corporation under § 1983 is more or less identical to the test employed to determine municipal or local government liability."[94] "Municipalities face § 1983 liability 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury . . . ."[95] As such, "[a] municipality is liable only for acts directly attributable to it 'through some official action or imprimatur.'"[96]

"To establish municipal liability under § 1983, a plaintiff must show the deprivation of a federally protected right caused by action taken 'pursuant to an official municipal policy.'"[97] Thus, Plaintiff must allege "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional

---

[91] *Est. of Bonilla*, 982 F.3d at 305 (quoting *Hyatt*, 843 F.3d at 177).
[92] Rec. Doc. 4, pp. 90, 99.
[93] *Id.* at p.103.
[94] *Woodward v. Lopinto*, No. 18-4236, 2021 WL 1969446, at *5 (E.D. La. May 17, 2021) (quoting *Alfred v. Corr. Corp. of Am.*, No. 08-0643, 2009 WL 789649, at *2 n.1 (W.D. La. Mar. 24, 2009)) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)).
[95] *Pineda v. City of Hous.*, 291 F.3d 325, 328 (5th Cir. 2002) (quoting *Monell*, 436 U.S. at 694).
[96] *Valle v. City of Hous.*, 613 F.3d 536, 541 (5th Cir. 2010) (quoting *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001)).
[97] *Id.* (quoting *Monell*, 436 U.S. at 691).

violation whose 'moving force' is that policy or custom."[98] Importantly, as to the last prong, "[t]he Supreme Court has explained that a municipality cannot be liable '[i]f a person has suffered no constitutional injury at the hands of the individual police officer.'"[99] Therefore, official capacity "claims fail without an underlying constitutional violation."[100]

Municipal liability can also be established through a failure to train and/or supervise theory. "To state a claim for a claim against a municipality for failure to train, 'a plaintiff must show that (1) the municipality's training policy or procedure was inadequate; (2) the inadequate training policy was a "moving force" in causing violation of the plaintiff's rights; and (3) the municipality was deliberately indifferent in adopting its training policy.'"[101] "All failure to act claims, such as . . . failure to train [or] supervise . . . involve the same basic elements: inadequacy, deliberate indifference, and causation."[102] "[I]f a plaintiff fails to state a viable claim against individual officials for deliberate indifference, then he has also failed to satisfy the causation element of a Section 1983 claim against a superior for failure to train and supervise."[103]

"An entity can only be considered a policymaker for § 1983 purposes if it 'takes the place of the governing body in a designated area of city administration.'"[104] "Policymakers act in the place of the governing body in the area of their responsibility; they are not

---

[98] *Id.* at 541–42 (cleaned up).

[99] *Bustos v. Martini Club Inc.*, 599 F.3d 458, 467 (5th Cir. 2010) (quoting *City of L.A. v. Heller*, 475 U.S. 796, 799 (1986)).

[100] *Whitley v. Hanna*, 726 F.3d 631, 648–49 (5th Cir. 2013) (citing *Bustos*, 599 F.3d at 467 ("Because [plaintiff] has alleged no constitutional injury attributable to the Officers, [plaintiff] has failed to state a claim that a City policy was the moving force behind a violation of his constitutional rights.")).

[101] *Jordan v. Gautreaux*, No. 21-48, 2022 WL 897549, at *15 (M.D. La. Mar. 25, 2022) (quoting *Valle*, 613 F.3d at 544 (citation omitted)).

[102] *Skinner v. Ard*, 519 F. Supp. 3d 301, 314 (M.D. La. 2021) (citation omitted).

[103] *Jordan*, 2022 WL 897549, at *15.

[104] *Belcher*, 492 F. Supp. 3d at 652 (quoting *Webster v. City of Hous.*, 735 F.2d 838, 841 (5th Cir. 1984)).

supervised except as to the totality of their performance."[105] Under La. R.S. § 15:703, "[t]he governing authority of each parish shall appoint annually a physician who shall attend the prisoners who are confined in parish jails whenever they are sick," but "[i]n lieu of appointing a physician, the governing authority of any parish may enter into a contract with a health care provider, licensed or regulated by the laws of this state, to provide requisite health care services."[106] Since Turn Key "was [allegedly] selected by the [City/]Parish to run [EBRPP]'s medical care program, it acts in place of the municipal governing body."[107] Therefore, Turn Key is a final policy maker of health care at EBRPP.

Considering the foregoing, pertinent to the Court's analysis is whether Plaintiff has alleged constitutional violations against individual Turn Key employees. Though Plaintiff makes allegations as to deliberate indifference of Turn Key employees in general,[108] "[d]eliberate indifference . . . cannot be shown through the actions of the cumulative group. Instead, each named member of that group must be shown to have acted, independently, with deliberate indifference."[109]

As discussed, Plaintiff fails to allege a constitutional violation against Woodson, Allen, and Smith. This result is similar to that of the Fifth Circuit's in *Branton v. City of Moss Point*, where the court found that insufficient allegations as to a prison official's knowledge is detrimental to proving deliberate indifference.[110] Plaintiff also asserts an episodic acts or omissions claim against Nurse Moore. Though Nurse Moore has not

---

[105] *Id.* (quoting *Webster*, 735 F.2d at 841).
[106] La. R.S. § 15:703(A)–(B).
[107] *Belcher*, 492 F. Supp. 3d at 652.
[108] *See, e.g.*, Rec. Doc. 4, at ¶ 290 ("The sheriff's employees' and Turn Key employees refusal to allow Kimberely Cage to bring Kaddarrius's at-home medication which she repeatedly explained was medically necessary for his severe mental illness, including schizophrenia and bipolar disorder, was tantamount to deliberate indifference to Kaddarrius's serious medical needs.").
[109] *Martinez*, 846 F. App'x at 243 (internal citation omitted).
[110] 261 F. App'x 659, 661–62 (5th Cir. 2008).

moved for dismissal of the claims asserted against her, the Court will analyze the sufficiency of such claims in order to assess the claims against Turn Key.

Plaintiff alleges that Nurse Moore is a Turn Key employee who serves as a nurse at EBRPP.[111] The only factual allegations Plaintiff makes regarding Nurse Moore is that she (1) saw Cage on the day of his suicide and noted that he was on "Mental Health Observation(N02),"[112] and (2) "did not send a request for information to Walgreens or initiate a medication verification [for] Cage's at home medications until after he was dead on May 31, 2023[,] at 1:23 p.m."[113]

Without more, Plaintiff fails to allege that Nurse Moore acted with deliberate indifference. "Deliberate indifference is an extremely high standard to meet[,]" and the Court cannot infer that Nurse Moore acted with deliberate indifference "merely from a negligent or even a grossly negligent response to a substantial risk of serious harm."[114] Plaintiff's factual allegations do not speak to Nurse Moore having knowledge of a substantial risk of harm and consciously disregarding that risk. Instead, Plaintiff makes conclusory allegations and speculates that Nurse Moore had a "culpable state of mind" because "she belatedly sent a request to Walgreens after knowing . . . Cage had already committed suicide."[115] In Plaintiff's view, this shows that Nurse "Moore knew she and other Turn Key staff should have verified [Cage's] at[-]home medication with the pharmacy earlier."[116] However, without concrete, factual allegations to support Plaintiff's theory, the Court cannot find that Nurse Moore acted with deliberate indifference to Cage's serious

---

[111] Rec. Doc. 4, p. 5.
[112] *Id.* at ¶ 50.
[113] *Id.* at ¶ 119.
[114] *Est. of Allison v. Wansley*, 524 F. App'x 963, 970 (5th Cir. 2013).
[115] Rec. Doc. 4, ¶ 120.
[116] *Id.*

medical needs. Therefore, Plaintiff fails to allege a constitutional violation against Nurse Moore.

Given that Plaintiff fails to allege constitutional violations against Woodson, Allen, Smith, and Nurse Moore, Plaintiff's episodic acts or omissions and *Monell* claims against Turn Key fail.[117] This result is similar to that of our Sister Court's in *Jordan v. Gautreaux*, where the Court found that failure to allege underlying constitutional violations in this context is fatal to a plaintiff's claims against a third-party health care provider.[118] As such, the Turn Key Defendants' motion is granted in this respect, and these claims against Turn Key are dismissed.

### C. Conditions of Confinement and *Monell*

Under the Due Process Clause, "a pretrial detainee may not be punished prior to an adjudication of guilt."[119] "When a pretrial detainee complains of conditions or restrictions of detention, 'the proper inquiry rather is whether those conditions amount to punishment of the detainee.'"[120] Again, all Plaintiff needs to show under *Bell v. Wolfish* is that "the condition of confinement is not reasonably related to a legitimate, non-punitive governmental objective."[121] As such, "[t]o prevail on [her] conditions-of-confinement claim, . . . [P]laintiff must show a condition—a 'rule,' a 'restriction,' an 'identifiable intended condition or practice,' or 'sufficiently extended or pervasive' 'acts or omissions' of jail officials—that is not reasonably related to a legitimate government objective and

---

[117] *See Whitley*, 726 F.3d at 648–49 (citing *Bustos*, 599 F.3d at 467 ("Because [plaintiff] has alleged no constitutional injury attributable to the Officers, [plaintiff] has failed to state a claim that a City policy was the moving force behind a violation of his constitutional rights.")).

[118] 2022 WL 897549, *12.

[119] *Jones v. Dall. Cnty.*, No. 21-10617, 2022 WL 3334493, at *2 (5th Cir. Aug. 12, 2022) (citing *Bell*, 441 U.S. at 535).

[120] *Id.* (citing *Bell*, 441 U.S. at 535).

[121] *Scott*, 114 F.3d at 53 (citing *Bell*, 441 U.S. at 539).

that caused the constitutional violation."[122] "A showing of express intent to punish is not required. Instead, such intent may be presumed where a policy is otherwise senseless."[123]

"Although municipalities cannot be held liable under section 1983 by virtue of the doctrine of respondeat superior, they are subject to such liability where official custom or policy is involved in the injury."[124] This principle was first recognized in *Monell v. Department of Social Services*.[125] "Proof of municipal liability sufficient to satisfy *Monell* requires: (1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy (or custom)."[126]

"[T]he standards for a *Monell* claim and for a conditions of confinement claim are similar and frequently overlap."[127] An "official policy or custom" giving rise to liability may be "a persistent, widespread practice which, although not officially promulgated, is so common and well settled as to constitute a custom that fairly represents municipal policy."[128] However, "[a] plaintiff may not infer a policy merely because harm resulted from some interaction with a governmental entity."[129] To plausibly plead "a practice 'so

---

[122] *Sanchez v. Young Cnty., Tex.*, 956 F.3d 785, 791 (5th Cir. 2020) (quoting *Duvall v. Dall. Cnty.*, 631 F.3d 203, 207 (5th Cir. 2011)).
[123] *Shepherd*, 591 F.3d at 454 (citing *Bell*, 441 U.S. at 539).
[124] *O'Quinn v. Manuel*, 773 F.2d 605, 608 (5th Cir. 1985) (citing *City of Okla. City v. Tuttle*, 471 U.S. 808 (1985)).
[125] 436 U.S. 658 (1978).
[126] *Pineda*, 291 F.3d at 328 (citing *Piotrowski*, 237 F.3d at 578).
[127] *Jordan*, 2022 WL 897549, *17. *See also Duvall*, 631 F.3d at 208 ("The jury found that Duvall's injury was caused by a policy or custom of the County. Although the jury found this fact in response to the court's instruction on municipal liability under the *Monell* test, the jury's finding satisfies the need for such a showing in connection with the underlying [conditions-of-confinement] constitutional violation as well.... We see no meaningful difference between these showings.... [W]e are convinced that the jury's finding of a custom or policy under the municipal-liability jury instruction satisfies the custom-or-policy element for purposes of the underlying constitutional violation.").
[128] *Esteves v. Brock*, 106 F.3d 674, 677 (5th Cir. 1997) (internal quotations omitted).
[129] *Colle v. Brazos Cnty., Tex.*, 981 F.2d 237, 245 (5th Cir. 1993).

persistent and widespread as to practically have the force of law,' . . . a plaintiff must do more than describe the incident that gave rise to his injury."[130] Further, to show "moving force" causation, a plaintiff "must demonstrate a direct causal link between the municipal action and the deprivation of federal rights."[131] "That is, 'the plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision.'"[132]

Here, Plaintiff asserts a conditions of confinement and *Monell* claim against Turn Key for its failure to provide sufficient staff to monitor and protect detainees like Cage.[133] She alleges that Turn Key won the proposal to provide health care at EBRPP in December 2021.[134] Turn Key took over health care at EBRPP in early 2022, and from that time until August 2023, there were nine pretrial detainee deaths at EBRPP.[135] The City/Parish contracted Turn Key for $5,589,975 despite a 2016 recommendation from Health Management Associates that EBRPP's health care budget should be $10,000,000.[136] Plaintiff alleges that "Turn Key has a policy of reducing the cost of healthcare services in a manner that would maintain or increase its profit margin."[137] Thus, Turn Key's contract with EBRPP "incentivizes cost-cutting measure in the delivery of healthcare services at EBRPP to benefit Turn Key's investors . . . ."[138]

---

[130] *Peña v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018) (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)).
[131] *Valle*, 613 F.3d at 542 (quoting *Bd. of Cnty. Comm'r v. Brown*, 520 U.S. 397, 404 (1997)).
[132] *Id*. (quoting *Brown*, 520 U.S. at 411).
[133] Rec. Doc. 4, ¶ 234.
[134] *Id*. at ¶ 146.
[135] *Id*. at ¶ 149.
[136] *Id*. at ¶¶ 146–47.
[137] *Id*. at ¶ 160.
[138] *Id*. at ¶ 161.

Plaintiff alleges various examples of cost-cutting measures at EBRPP, including "under-prescribing medication, under-administrating medication, and avoiding off-site medical costs."[139] Turn Key's contract with EBRPP allegedly states that "Turn Key 'will negotiate discounted rates with a pharmacy licensed in the State of Louisiana' and Turn Key 'will be responsible to pay costs of all pharmaceuticals as required by current applicable law[,]'"[140] thus creating "an incentive for Turn Key and its employees to under prescribe medications and under-administer medications to increase Turn Key's profits."[141] Likewise, Plaintiff alleges that Turn Key does not have a "mandatory minimum expenditure for the provision of healthcare services."[142]

Plaintiff further alleges that Turn Key cuts costs through "inadequately staffing parish jails, including EBRPP, with undertrained, underqualified, and unsupervised medical personnel who are ill-equipped to evaluate, assess, supervise, monitor, or treat inmates . . . ."[143] As to Cage in particular, Plaintiff alleges that Turn Key delegated medical decision-making authority to Smith, who is a social worker and non-medical employee.[144] Likewise, Turn Key utilized Allen, a licensed professional counselor unable to prescribe medications, to counsel Cage out of his paranoid schizophrenia and bipolar disorder rather than prescribing him the powerful antipsychotics needed to treat his mental illnesses.[145] Further, Woodson "was not a licensed practical nurse in the state of Louisiana as required by" Turn Key's contract with EBRPP.[146] Thus, Woodson was unqualified to

---

[139] *Id.* at ¶ 165.
[140] *Id.* at ¶ 166.
[141] *Id.* at ¶ 167.
[142] *Id.* at ¶ 171.
[143] *Id.* at ¶ 172.
[144] *Id.* at ¶ 174.
[145] *Id.* at ¶¶ 176–77.
[146] *Id.* at ¶ 173.

make medical determinations, such as determining whether Cage was suicidal or in dire need of his medications, upon intake.[147]

Plaintiff then points to various examples of Turn Key's cost-cutting measures in other prisons and how these measures have affected the adequacy of Turn Key's staff and their issuance of medical care.[148] She alleges that these examples "show[] that Turn Key had a widespread practice and *de facto* policy of cost-saving measures in inadequate staffing with unqualified and unsupervised personnel who were ill-equipped to evaluate or assess, monitor or treat prisoners adequately[,]" which led to "profits over prisoners' lives."[149]

The Turn Key Defendants argue that Plaintiff has failed to allege facts to plausibly state a claim for conditions of confinement in suicide cases.[150] They point to the fact that there has only been one suicide during Turn Key's tenure at EBRPP—that being Cage's.[151] They further argue that "reference[s] to other non-suicide events, even as ple[]d are materially different than the circumstances surrounding the incident here."[152] In opposition, Plaintiff argues that she "plausibly alleges an explicit policy through a contract with Turn Key which incentivizes cost-saving measures and profit margins for Turn Key over providing constitutionally adequate medical care to detainees like . . . Cage."[153] In Plaintiff's view, these allegations "show[] a policy by Turn Key of reducing healthcare to increase or maintain its profit margin . . . ."[154]

---

[147] *Id.*
[148] *Id.* at ¶ 187.
[149] *Id.* at ¶ 188.
[150] Rec. Doc. 44-1, p. 7.
[151] *Id.*
[152] *Id.*
[153] Rec. Doc. 57, p. 16.
[154] *Id.* at 17.

The Court finds that Plaintiff has adequately alleged conditions of confinement and *Monell* claims against Turn Key. When reading Plaintiff's factual allegations in a light most favorable to her and drawing all inferences in her favor, Plaintiff alleges that (1) Turn Key has a *de facto* policy or custom of cutting costs, which leads to a failure to provide sufficient staff to monitor and protect detainees, and (2) that there is no legitimate, non-punitive governmental objective in doing so.[155] Further, Turn Key is a final policy maker as to health care at EBRPP.[156] As such, Plaintiff adequately alleges that Turn Key had actual knowledge of its *de facto* policy or custom and that such "widespread practice and pervasive actions w[ere] the moving force of constitutionally inadequate medical care, which led to . . . Cage's death and twelve days of pain and suffering while being unmedicated."[157] Therefore, the Turn Key Defendants' motion is denied as to Plaintiff's conditions of confinement and *Monell* claims against Turn Key.

## IV.    LEAVE TO AMEND

Considering the deficiencies described above, the Court will grant Plaintiff leave to amend her First Amended Complaint.[158] The Federal Rules of Civil Procedure provide that "[t]he court should freely give leave when justice so requires."[159] Moreover, "courts should ordinarily grant a plaintiff at least one opportunity to amend before dismissing a complaint with prejudice for failure to state a claim."[160] Nevertheless, Plaintiff is cautioned that any amendments must comport with this Court's Ruling, and Plaintiff does not have

---

[155] The Court notes that Turn Key did not address in its motion the issue of whether there was a legitimate, non-punitive government objective in Turn Key cutting costs.
[156] *See* La. R.S. § 15:703. *See also* discussion *supra*.
[157] Rec. Doc. 4, ¶ 189.
[158] Rec. Doc. 4.
[159] Fed. R. Civ. P. 15(a)(2).
[160] *Matthews v. Stolier*, No. 13-6638, 2014 WL 5214738, at *12 (E.D. La. Oct. 14, 2014) (citing *Hart v. Bayer Corp.*, 199 F.3d 239, 247 n.6 (5th Cir. 2000)).

leave to add new parties or claims; she may only amend to cure the deficiencies set forth herein, if possible.[161]

## V.    CONCLSUION

For the foregoing reasons, the Motion to Dismiss filed by the Turn Key Defendants is GRANTED IN PART AND DENIED IN PART. As to Plaintiff's Conditions of Confinement and *Monell* claims against Turn Key, the motion is DENIED. In all other respects, the Motion is GRANTED. Plaintiff is granted leave to amend her First Amended Complaint[162] and is hereby granted twenty-one (21) days leave from the date of this Ruling to state a claim, if possible.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this 25th day of September, 2025.


*Shelly D. Dick*
_____
**SHELLY D. DICK**
**CHIEF DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**

---

[161] If Plaintiff wishes to amend more broadly, she must file a motion under the applicable Federal Rules of Civil Procedure.
[162] Rec. Doc. 4.